## NORTH v. JONES.

[No. 7,595.   Filed December 12, 1912.   Rehearing denied April 1, 1913.]

1. APPEAL.— *Briefs.— Sufficiency.— Waiver of Errors.*— Although appellant's failure to properly present in his brief certain errors assigned amounts to a waiver of such errors, such failure will not render the brief insufficient so as to prevent a consideration of questions arising on other errors and which are therein properly presented.   p. 206.

2. BOUNDARIES.— *Monuments.— Government Surveys.*— The original stakes or monuments set by the government surveyors to establish section points control if existing, but if lost the points must be determined from other evidence and the location as thus determined will be controlling.   p. 207.

3. TRIAL.—*Instructions.—Province of Jury.—Weight of Evidence.* —In an action of ejectment in which a material question for determination was the location of the stone marking the northeast corner of the section, an instruction that evidence was introduced tending to establish a prolongation of the line from the northwest corner to the middle section corner and thence to the east line, which tended to show that such line would be 6½ feet north of the fence built by defendant at the northwest corner of plaintiff's land and 12.62 feet north of the post at the east end of such fence, and stating that if the jury believed said line to be the north line of the section its verdict should be for plaintiff, gave undue prominence to such evidence, in view of the fact that

there was other evidence differing as to the location of such line, and invaded the province of the jury. p. 210.

4. BOUNDARIES.—*Presumptions.*—*Straight Lines.*—*North Section Lines.*—In view of the method employed by the government surveyors in establishing the north line of a section in the tier of sections immediately west of the range line, it may be presumed that such a line is a straight line, but such presumption may be rebutted by the evidence. p. 210.

5. EVIDENCE.—*Judicial Notice.*—The court takes judicial notice of the rules governing the survey of public lands. p. 211.

6 EVIDENCE.—*Burden of Proof.*—*Presumptions.*—Where a party has the burden of proof upon a given issue and a rebuttable presumption arises in his favor, either as a result of evidence introduced or from facts judicially known by the court, such presumption will prevail in his favor until it is met and rebutted by evidence, but, while in such case the burden of going forward with the evidence devolves upon his adversary, the burden of the issue does not shift. p. 212.

7. EVIDENCE.—*Preponderance.*—*Burden of Proof.*—*Presumptions.* —The duty of producing a preponderance of the evidence upon a given issue always rests upon the party having the affirmative of such issue, and the burden of proof cannot be changed or shifted by any presumption that may arise during the introduction of the evidence. p. 212.

8. TRIAL.—*Instructions.*—*Burden of Proof.*—*Misleading Jury.*—An instruction stating that the burden of showing that a section line is not a straight line is upon the party who claims that the line was not straight in fact, and if the evidence as to the line being straight or otherwise, is of equal weight, the presumption that the line was straight would not be overthrown, was obscure and misleading. p. 213.

9. BOUNDARIES. — *Section Lines.* — *Evidence.* — *Other Surveys.* — Where, in an ejectment proceeding, the location of the eastern terminus of the north line of a certain section of land, which was bounded on the east by the range line, was an essential point in dispute, evidence relating to the survey of the range line was admissible. p. 214.

10. TRIAL.—*Instructions.*—*Weight of Evidence.*—*Province of Jury.* —It is not the province of the court to advise the jury as to the weight or value of evidence, and an instruction which indicates that a particular class of evidence is to be given greater weight than other evidence, is erroneous as invading the province of the jury. p. 214.

11. BOUNDARIES. — *Evidence.*— *Instructions.*— *Province of Jury.*— In an action involving the location of a boundary line, an instruction that fences of long standing erected upon what parties

have called the true line, and up to which they have improved and cultivated, are better evidence of the true line than surveys made after the monuments have disappeared, is erroneous as misleading the jury. p. 215.

12. APPEAL.— *Review.— Harmless Error.— Instructions.—* An instruction which told the jury that the defendant had admitted of record that a certain stone marking a section corner was correctly located, by the statement that no evidence would be introduced to dispute its location, was erroneous, but was harmless in view of the fact that at the time the statement was made some evidence had already been introduced tending to show that such stone was correctly located. p. 215.

13. EVIDENCE.—*Admissions.*—The statement made by defendant's attorney that no evidence would be introduced to dispute the location of certain corner stones did not amount to an admission that such stones were correctly located. p. 215.

14. BOUNDARIES.—*Location of Section Corners.—Instructions.*—An instruction which told the jury that if it found that the point at which the north line of section 18 intersected the range line was marked and recorded and undisputed as the original government corner, it might consider its location in determining where the east corner of section 13 was located, was incorrect, since the jury had a right to consider such stone if it found that it did in fact mark the northwest corner of section 18 as located by the government survey, and the instruction inferentially denied such right unless the jury found that such stone was marked and undisputed as the original government corner. p. 216.

From Randolph Circuit Court; *John W. Macy,* Special Judge.

Action by Ebenezer S. Jones against William North. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Smith & Moran, Henry Eichhorn* and *Caldwell & Parry,* for appellant.

*Snyder & Smith,* for appellee.

LAIRY, J.—This action was brought by appellee as plaintiff to eject appellant from a small parcel of land described in the complaint consisting of about .43 of an acre. At the time of the commencement of the action the plaintiff owned the east half or the northeast quarter of section 13, township 23 north, range 13 east. The defendant owned

the southeast quarter of section 12 in the same township and range and, also, the east half of the southwest quarter of said section. Both sections 12 and 13 are bounded on the east by the range line. It thus appears that for a distance of eighty rods west from the range line, the north line of plaintiff's land forms the south line of the lands of the defendant. The land in controversy as described in the complaint consists of a strip 80 rods in length, extending west from the range line and being 19.1 feet in width at the east end and 9.5 feet in width at the west end. According to the averments of the first paragraph of complaint this strip is located immediately south of and bordering on the line between section 12 and section 13, and according to the averments of the second paragraph it is located independently of the section line and may be in either section, or partly in both. There was a verdict and judgment for plaintiff and defendant prosecutes this appeal.

Appellee contends that the brief of appellant is not sufficient under the rules of this court to present any question for decision. It is true that appellant has waived some of the errors assigned by failing to present them properly in his brief; but the action of the court in overruling appellant's motion for a new trial is assigned as error, and some of the questions arising thereunder are properly presented and argued in the brief and these will be considered. The questions thus presented relate principally to the instructions. An intelligent discussion of the correctness and applicability of these instructions requires a brief statement of some of the facts as disclosed by the evidence. At the time this controversy arose, the stake set by the government surveyors to mark the northeast corner of section 13 had been obliterated and the location was lost, and the line extending west therefrom to the north quarter corner of section 13 was in dispute. Appellant, before the suit was commenced built a wire fence commencing at the range line near a stone known as the

"Current Stone" which, as he claimed, marked the northeast corner of section 13, and extending west a distance of 40 rods upon what he claimed to be the section line and the southern boundary of his land. It seems to be conceded that this fence and a line extended west therefrom and on a line therewith, mark the southern boundary of the land in dispute.

One of the questions of fact to which the evidence related was the location of the northeast corner of section 13 as fixed by the government survey and also the location of the line extending therefrom to the north quarter corner of section 13, appellant claiming that the "Current Stone" marked the corner and that the fence erected by him was on the line, while appellee contended that the true corner was located some distance north of said stone and that the section line extended therefrom in a westerly direction to the north quarter corner of section 13. The northeast corner of section 13 as fixed by the government survey, marks the eastern terminus of the east half of such line, the north quarter corner marks its eastern terminus and a straight line connecting these two points marks the east one-half of said section line, the location of which is in controversy in this case. If the original stakes or monuments set 2. by the government surveyors to mark these two points can be found they control, but if one or both of such monuments are obliterated or lost the point of the former location of such monument or monuments must be determined from the evidence, and when so determined such points will mark the terminations of such line and will be controlling. In the making of government surveys the township lines and the range lines are first run. The range lines are run north and south six miles apart, and the township lines are run east and west a like distance apart, thus dividing the State into congressional townships of thirty-six sections each. When these range lines are surveyed, section corner posts are placed and properly wit-

nessed at intervals of one mile, and quarter corners are also set and witnessed at points between the section corners and one-half mile distant therefrom. The section corners and the quarter corners so fixed in the survey of the range line constitute the corners and the quarter corners of the tier of sections immediately to the west of such range line. Sections 13 and 12 in which the lands of appellant and appellee are located are situated in the tier of sections immediately west of the range line, and the stake marking the northeast corner of section 13 and the southeast corner of section 12 was therefore located by the survey of the range line.

The regulations of the Department of the Interior, which have the force of law, do not permit the interior subdivisions of the congressional townships to be made by the same surveyor who runs the township and range lines, and such interior subdivisions are made at a subsequent time and by a different surveyor. In making this subdivision the surveyor began at the southeast corner of the township and surveyed the east tier of sections first proceeding north. The south line of section 13 would thus be fixed by the survey of the north line of the section immediately to the south, and the stake set at the northwest corner of such section to the south would mark the southwest corner of section 13. In surveying section 13 the government surveyor would begin at the stake set to mark the northwest corner of the section immediately to the south and run north parallel to the range line for the distance of forty chains and there mark and witness the west quarter corner post, then continuing the line in the same direction forty chains more, he would there set the stake for the northwest corner of section 13. From this point it was his duty to establish a line to the northeast corner of said section as established by the survey of the range line. This was done in the following manner as shown by the field notes introduced in evidence. From the northwest corner east on random line

between sections 12 and 13 forty chains set temporary post; thence east 79 chains and 70 links intersecting range line at 125 links north of post; from post at northeast corner of section 13 ran west on true line 39 chains and 85 links and set and witnessed quarter corner post. The evidence shows a stone now located at the northwest corner of section 13 and a stone at the north line of that section at the quarter corner, and there was evidence tending to show that these stones had been long recognized as marking the correct location of these corners as fixed by the government survey. As to these stones counsel for appellant, upon the trial of the case made the following statement: "Let us say here that we will offer no evidence to dispute either the stone marking the north quarter corner of section 13 or the stone marking the northwest corner of section 13; we don't want to do anything that will relieve you of making out your case as you want to make it, but we will say that we will offer no evidence to contradict either one of these two stones." As heretofore stated the location of the northeast corner of section 13 as fixed by the government survey was lost. For the purpose of fixing its location, several unofficial surveys had been made. Two surveyors testified that they ran the north line of section 13 by starting at the stone at the northwest corner of the section and projecting a straight line over the stone found at the north quarter corner to the range line on the east. The witness Charles testified that a line so projected intersected the range line at a point 12.62 feet north of the "Current Stone" near the east end of appellant's fence, and, at a point opposite appellee's west line, the line so projected was 6.5 feet north of the wire fence; while the witness Clayton testified that a line so projected intersected the range line at a point 6.5 feet north of the east post of appellant's fence.

As bearing upon this evidence the court gave to the jury the following instruction; "No. 6. You are instructed

that evidence has been introduced tending to estab-
3. lish a prolongation of the line from the northwest
corner of section 13 to the middle section corner and
thence to the range line, which evidence tends to establish
that such line would be 6½ feet north of the wire fence re-
cently built by the defendant, North, at the northwest cor-
ner of the Jones land and 12.62 feet north of the post at
the east end of the fence recently built by the defendant,
North. If the jury after considering all of the evidence in
the case, find and believe that said line is the north line of
said section 13 at that point, and that the intersection of
said line so projected and drawn, with the range line, marks
the point where the northeast corner section stake was placed
by the original government survey, then you may return
a verdict for the plaintiff and that he is the owner of said
described tract lying between said projected line and said
wire fence.'' This instruction is subject to criticism for
the reason that it gives undue prominence to the testimony
of the witness Charles. His testimony as to the location of
the projected line in reference to the east end of the fence
built by appellant differed from testimony of the witness
Clayton. It was the province of the jury, to decide, in the
first place, whether either of the projected lines located by
these surveyors in the manner described, marked the true
north line of section 13; and, if it found that one of said
projected lines marked the section line as located by the
government survey, it was its further duty to decide by
which of said lines it was so marked. This question should
have been left to the jury without giving undue prominence
to the line as fixed by either witness over that as fixed by
the other.

Speaking in reference to the north line of section 13 the
court in the latter part of instruction No. 20 to the jury
said; '' * * * such line must be presumed by you
4. to have been a straight line. This presumption must
remain until it is shown by the evidence that it was,

in fact, not a straight line. The burden of showing that such a line was not a straight line is upon the party who claims that the line was not straight in fact, and if the evidence as to the line being straight or otherwise, is of equal weight, then and in that case the presumption that the line was straight would not be overthrown.'' In surveying the north line of two sections lying in the tier immediately west of the range line, the government surveyors began at the northwest corner and ran a random line, parallel with the south township line. At a point midway between the northwest corner of the section line and the range line, they set a stake to mark the temporary north quarter corner; then continued the line in the same direction until it intersected the range line. If the point of intersection coincided with the corner of the section fixed by the previous survey of the range line, the temporary stake, set to mark the quarter corner was established as the permanent quarter corner, and the north line of the section was thus established; but, if the point of intersection with the range line was north or south of the corner of the section as previously located, the surveyors measured the distance from such point of intersection to the section corner and by a computation determined how far the temporary quarter stake would have to be moved to the north or south, as the case might be, in order to bring it in line with the two corners of the section. The quarter corner stake was then moved the required distance and there established as the permanent quarter corner. The computation thus made might be presumed to have been correct and it may therefore be presumed that a line passing over the three corners so established would be a straight line, but this is not necessarily true. There may be a break in the line at the quarter corner. The court takes judicial notice of the rules governing the survey of public lands, and the learned judge who tried

5.

the case, correctly informed the jury that the line in question was presumed to be straight. This presumption

arises from the facts of which the court takes judicial notice, but it may, nevertheless, be rebutted by evidence.

6. Where a party has the burden of proof upon a given issue and a presumption of this kind arises in his favor, either as a result of evidence introduced or from facts judicially known to the court, such presumption will prevail in his favor until it is met and rebutted by evidence. In such a case the party having the affirmative of the issue may rely upon the presumption, and the burden of going forward with the evidence then devolves on his adversary; but the burden of the issue does not shift.

7. The duty of producing a preponderance of the evidence upon a given issue always rests on the party having the affirmative of such issue and the burden of proof can not be changed or shifted by any presumption that may arise during the introduction of the evidence. Under the issues in this case appellee undertook to prove affirmatively that appellant was in the possession of land lying south of the section line dividing his lands from those of appellee. This could be done only by proving the location of the line, and that the appellant was in the possession of lands on the south side thereof. If for the purpose of showing the location of the section line, appellee sought to prove that the north line of Section 13 was straight throughout its entire course, he must establish this fact by a preponderance of the evidence. He might rely, in the first instance upon the presumption that the line was straight, but if evidence was introduced by the defendant tending to show the contrary the question would have to be determined by the jury from the weight of the evidence. In weighing this evidence the jury must find that the preponderance, or greater weight, was with appellee in order to entitle him to a finding in his favor upon this question.

The appellant contended that the north line of this section was not straight but that it broke at the north quarter corner and that the northeast corner of the section, its eastern

terminus, was at a point 12.62 feet south of the point where the range line would be intersected by a straight line projected from the stone at the northwest corner of the section over the stone at the north quarter corner. Evidence was introduced by the appellant tending to prove his contention. The appellee had the affirmative of this issue and must sustain it by the greater weight of the evidence. In weighing the evidence, the presumption referred to would have weight in favor of the appellee, and if the other evidence was equally balanced this presumption would be sufficient to turn the scales in his favor, but, if after weighing this presumption together with the other evidence produced in favor of the appellee on this question as against the evidence produced in favor of the appellant, the jury was unable to say on which side the preponderance lay, the appellee would fail on this issue. 1 Elliott, Evidence §§132, 139, 140; *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; *Young* v. *Miller* (1896), 145 Ind. 652, 44 N. E. 757; *Holt Ice, etc., Co.* v. *Arthur Jordan Co.* (1900), 25 Ind. App. 314, 57 N. E. 575; *Farmers Loan, etc., Co.* v. *Siefke* (1895), 144 N. Y. 354, 39 8. N. E. 358. The part of this instruction relating to the burden of proof is obscure and misleading and for that reason should not have been given.

Instruction No. 22 objected to by appellant is as follows: "You are instructed that where a disputed boundary as fixed by the original government survey, is to be determined, the same must be done from the monuments actually fixed and placed by such survey. In determining a boundary by such monuments, if a question arises as to which monument should be used in determining the line, those monuments which are a part of the survey in which the disputed boundary line is fixed, and which are the best known and identified are regarded as the safer guide for determining the boundary of which they are monuments." By the government survey of the north line of section 13 only two monu-

ments were fixed, one at the northeast corner of the section and the other at the north quarter corner. The boundary line, the location of which is in dispute, does not lie between the two corners established by this survey; but it lies between the north quarter corner and the northeast corner of the section as established by the government survey of the range line, and is properly shown by a straight line connecting these two points. In order to locate this line it was necessary to locate its eastern terminus which was the northeast corner of section 13 as fixed by the government survey of the range line, and to fix this point, evidence relating to the survey of the range line was admissible. Evidence was introduced having a tendency to prove the location of the east quarter corner of sections 13 and 12, both of which were established by the survey of the range line and evidence of the government field notes was introduced showing the distance of these corners from the lost corner. Surveyors testified that they had made measurements in accordance with these field notes and thus fixed the location of the post set by the government to mark the northeast corner of section 13 at a point near the east end of appellant's fence. The weight of this testimony was a question to be determined by the jury. By instruction No. 22, the court in effect told the jury that the monuments fixed in the survey of the north line of the section should be given greater weight in determining the location of the lost line than any monuments established on the range line or any measurements taken therefrom. This instruction invades the province of the jury by indicating that a particular class of evidence is to be given greater weight than other evidence having a tendency to prove the same fact. It is not the province of the court to advise the jury as to the weight or value of evidence. *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 72 N. E. 1045; *Goodwin* v. *State* (1884), 96 Ind. 550.

By instruction No. 23 the jury was told that fences of

long standing erected upon what parties have called the true line, and up to which they have improved and 11. cultivated, are better evidence of the true line than surveys made after the monuments have disappeared. This instruction invades the province of the jury and is erroneous for that reason. If the evidence shows that fences were built at a time when the original stakes set by the government to mark the corners were still in existence and that such fences were built with reference to such stakes or their known location, the court might properly instruct the jury that it was proper to consider such facts in determining what weight should be given to the location of such fences as indicating the true line, but the court should not consider the evidence as to such facts and decide therefrom that evidence of the location of ancient fences is of greater weight as indicating the true line than other evidence bearing upon the same subject, and so inform the jury. By so doing the court invades the province of the jury and commits reversible error. Numerous other instructions were given some of which contain the same vice pointed out in those already discussed. This is particularly apparent in instructions Nos. 25 and 30.

Instruction No. 28 is objected to upon the ground 12. that it tells the jury that the defendant had admitted of record that the stone at the northwest corner of 13. the section and the stone at the north quarter corner were correctly located. The statement of the attorney for defendant that no evidence would be introduced to dispute the location of these stones did not amount to an admission that they were correctly located, but, in view of the fact that, at the time such statement was made, some evidence had already been introduced tending to show that such stones were correctly located, the statement complained of was harmless.

The field notes of the government survey of section 18 show that the northwest corner of that section was located

on the range line at a point 54 links north of the northeast corner of section 13. There was also evidence that a road is located on the north line of section 18 and that a stone is located on the range line, on a line with the center of this road. There was also evidence tending to show that this stone marked the northwest corner of section 18 as fixed by the government survey. In respect to this evidence, the court told the jury that if it found that the point at which the north line of section 18 intersected the range line was marked and recorded and undisputed as the original government corner, it might consider its location in determining where the lost corner of section 13 was located. The jury was thus inferentially told that it could not consider this stone in determining the location of the lost corner unless it was marked and undisputed as the original government corner. This is not a correct statement. The jury would have a right to consider this stone for the purpose mentioned if it found from the evidence introduced that it did in fact mark the northwest corner of section 18 as located by the government survey.

If it were shown by the evidence in this case that the plaintiff had occupied a portion of the land north of the section line for twenty years under such circumstances as to give him title thereto by adverse possession, then the north line of his lands would be the north line of the land so adversely occupied regardless of where the section line was originally located. We have carefully examined the record and we find no evidence which could have justified the jury in finding that the plaintiff acquired title by adverse possession up to the line fixed in the verdict. We are equally well satisfied that there is no evidence in the record which would justify a finding that the line in dispute in this case had been established by the mutual agreement of the parties and by occupancy under such agreement. It is apparent that the jury reached its verdict by fixing the lost northeast corner of section 13 at a point on the range line where the same is

intersected by a straight line commencing at the stone at the northwest corner of the section and thence extended over the north quarter stone to the range line, and by treating this extended straight line as the northern boundary of appellee's land. The jury might have reached the same verdict under proper instructions, but we have no means of knowing that it would have done so. The judgment of the trial court is not so clearly right under the evidence as to warrant us in disregarding the errors pointed out in the instructions. Some other questions are presented which we do not decide for the reason that the same questions are not likely to arise on another trial of the case.

The judgment is reversed with directions to grant a new trial.

NOTE.—Reported in 100 N. E. 84. See, also, under (1) 2 Cyc. 1014; (2) 5 Cyc. 871, 920; (3) 38 Cyc. 1675; (4) 5 Cyc. 876, 955; (5) 16 Cyc. 903; 124 Am. St. 22; (6) 16 Cyc. 934; (7) 16 Cyc. 926, 932; (8) 38 Cyc. 1749; (9) 5 Cyc. 956, 966; (10) 38 Cyc. 1646; (11) 5 Cyc. 971; (12) 38 Cyc. 1809; (13) 16 Cyc. 965, 1042. As to geographical facts of which judicial notice is taken, see 124 Am. St. 32. As to burden of proof generally and on whom it rests, see 135 Am. St. 765. As to conflicts between surveys in determining boundaries, see 22 Am. St. 34. As to invasion by court of jury's province by instructing on matters of fact, see 14 Am. St. 36. As to control of calls for monuments and lines marked on the ground, see 129 Am. St. 996. As to lines run by government surveyors, see 110 Am. St. 677. As to what burden of proof is, and how it applies, see 135 Am. St. 765; 16 Am. St. 439.