UNITED LEASESHARES, INC.,
Appellant (Plaintiff-Below),

v.

CITIZENS BANK & TRUST COMPANY
and Jim Boone Volkswagen, Inc.,
Appellees (Defendants-Below).

CITIZENS BANK & TRUST
COMPANY, Third-Party
Plaintiff,

v.

UNITED KENTUCKY BANK, n/k/a Liberty National Bank & Trust
Company, Third-Party Defendant.

No. 1–1183A367.

Court of Appeals of Indiana,
First District.

Nov. 27, 1984.

Jonathan D. Goldberg, Dennis J. Stilger, Goldberg & Simpson, P.S.C., Louisville, Ky., Barry N. Bitzegaio, Lorch, Moyer, Gesenhues & Bitzegaio, New Albany, for appellant.

Ronald D. Fifer, Stephen W. Voelker, Fifer, Vogt & Lanum, Jeffersonville, C. Gregory Fifer, Jeffersonville, for appellees.

ROBERTSON, Judge.

This is an appeal from a civil proceeding brought by United Leaseshares, Inc. (Leaseshares) to determine the priority of the parties to four Volkswagen Rabbits under the Uniform Commercial Code (UCC). The Clark Superior Court found against Leaseshares and in favor of the appellees, Citizens Bank and Trust Company (Citizens Bank), Jim Boone Volkswagen, Inc. (Boone) and United Kentucky Bank, (United), n/k/a Liberty National Bank and Trust Company, (Liberty).

The parties designated in this case are as follows: Citizens is an Indiana Bank with its main office in Jeffersonville. Leaseshares is a Louisville, Kentucky leasing company that buys equipment from vendors and then leases that equipment to its customers. United is a bank based in Louisville and is now merged with Liberty.

The historical facts are as follows: Boone had a car dealership in Jeffersonville, Indiana out of which he sold and rented new Volkswagens and used cars of all makes. At the time Boone went into business, he requested and received from Citizens a floor plan financing arrangement

which created three different floor plans. One floor plan was for new cars, one was for used cars, and the other was for the rental fleet. In order to protect its position, Citizens withheld the certificate of origin on all new cars until Boone sold them at which time he could pick up the certificate. It also conducted various commodity checks to verify that Boone still possessed the financed automobiles. Citizens did not require that Boone pay off the cars prior to the time of placing them on the used and/or rental floor plan. Also, Citizens had a practice of allowing Boone to take cars off the floorplan, receive the certificates of origin and then, later, pay for the cars. The number of days Boone had to pay for the cars varied at different times.

On October 28, 1982, Boone placed four new Volkswagen Rabbits under its floor plan agreement with Citizens and Citizens obtained the certificates of origin. One day later, on October 29, 1982, Boone sold these same four Volkswagens to Leaseshares, and, simultaneously, leased them back from Leaseshares.

Leaseshares relied on Boone to obtain the certificates of origin and secure Indiana titles in its name. Boone did not pick up the certificates of origin from Citizens until late in the month of January, 1983. At that time, Boone picked up two of the certificates and secured titles in Leaseshares's name, but the other two certificates remained with Citizens. Simultaneously with its sale and lease back to Boone, Leaseshares had assigned these four leases to United, which also failed to obtain titles to the four Volkswagens until the end of January, 1983.

On February 19, 1983, James Boone, the president and owner of the Boone dealership, disappeared. At that time, Boone had not paid Citizens for the four Volkswagens. Both Leaseshares and Citizens demanded possession and suit was then instituted to determine who was entitled to the four Volkswagens. The trial court found that under the U.C.C., Citizens was entitled to the four automobiles. The court also found Leaseshares guilty of negligence and awarded six thousand two hundred and twenty one dollars ($6,221.00) to Citizens. The issues submitted on appeal are as follows:

1. Whether the trial court erred in finding the transaction between Boone and Leaseshares to be a mere security lease.

2. Whether the trial court properly applied the provisions of IND.CODE 26–1–9–307(1) to the facts of this case.

3. Whether the trial court properly applied the provisions of IND.CODE 26–1–9–306(2) to the facts of this case.

4. Whether the trial court properly applied the provisions of IND.CODE 26–1–9–301 to the facts of this case.

5. Whether the trial court erred in finding that Leaseshares had violated IND. CODE 32–2–1–7 and that the conveyance between Boone and Leaseshares to be fraudulent and void.

6. Whether the trial court erred in not finding that Leaseshares was entitled to at least two of the automobiles.

7. Whether the trial court erred in finding negligence on the part of Leaseshares and further by applying 9–1–2–1 and 9–1–4–1 to this security interest dispute.

8. Whether the trial court erred in refusing to grant summary judgment.

9. Whether the trial court erred in refusing to dismiss Citizen's counterclaim.

In this case, the trial court made findings of fact and conclusions of law. Thus, we must determine whether the findings are adequate to support the trial court's decision. *Shrum v. Dalton* (1982) Ind.App., 442 N.E.2d 366. We will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. IND.RULES OF TRIAL PROCEDURE, Trial Rule 52(A).

██ In order to determine which party prevails in this case, we must first determine whether the agreement between Boone and Leaseshares was a true sale and

leaseback or merely a security arrangement. "The primary issue to be decided in determining whether a lease is 'intended as security' is whether it is in effect a conditional sale in which 'lessor' retains an interest in the 'leased' goods as security for the purchase price". *Matter of Marhoefer Packing Co., Inc.* (7th Cir.1982) 674 F.2d 1139, 1142. By defining a "security interest" in section 26–1–1–201(37) of the Code as including a lease intended as security the drafters intended such a disguised security interest to be governed by the same rules that apply to other security interests. In this respect, section 1–201(37) represents the drafter's refusal to recognize form over substance. *Id.; See,* U.C.C. Art. 9. I.C. 26–1–1–201(37) reads in pertinent part as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation ... Unless a lease or consignment is intended as a security, reservation of title thereunder is not a 'security interest' ... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Section 1–201(37) states that the facts of each case must be examined individually in order to determine whether a lease is intended for security, however, the statute only gives the option to purchase as an example of what facts may be relevant. Other facts that courts have found relevant include the following:

1. The total amount of rent the lessee is required to pay;

2. Whether the lessee acquires any equity in the leased property;

3. The useful life of the leased goods;

4. The nature of the lessor's business; and

5. The payment of taxes, insurance and other charges normally imposed on ownership.

*See, Marhoefer, supra* at 1145.

█ In regard to the option to purchase, the courts have also stated that what is to be considered "nominal consideration" depends upon the particular facts of each case. However, the courts are clear upon one thing, which is that where the terms of the lease and option purchase are such that the only sensible course of action for the lessee at the end of the term is to exercise the option to purchase and become the owner of the goods, then the lease becomes one intended to create a security interest. *Percival Construction Co. v. Miller & Miller Auctioneers* (10th Cir.1976) 532 F.2d 166; *Matter of Berge* (1983) 32 B.R. 370. Consideration of the facts in this case leads us to conclude that the transaction between Leaseshares and Boone was actually an arrangement whereby Leaseshares merely financed Boone's acquisition of the four automobiles in question.

█ Leaseshares sought to dispose of most, if not all, of the incidents of ownership in the automobiles, while simultaneously retaining sufficient interest to assure payment by Boone. The record reveals that Boone assumed the obligation to meet all operating expenses, insurance payments, title fees, taxes, registration and licensing fees, all repairs not covered by insurance, and all maintenance costs. Also, the four automobiles never left Boone's place of business and remained under Boone's control at all times.

Boone clearly agreed to pay Leaseshares a set amount each month as lessee. The amount of the monthly payments was equal to the $4,894.15 advance by United to Leaseshares, plus 15.25 per cent interest on each car. In addition, Boone had the option to become the owner of the leased goods at the expiration of the lease term. The only economically feasible business decision for Boone to make was to repurchase the au-

tos, as Leaseshares had established a very low lease end value.

In light of these facts, we cannot say that the trial court's decision was clearly erroneous. The trial court properly assessed the arrangement between Boone and Leaseshares as being a security lease requiring the filing of a financing statement.

The next issue is whether the trial court properly applied the provisions of I.C. 26–1–9–307(1) to this case. I.C. 26–1–9–307(1) reads in pertinent part:

> A buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

■ We hold that Leaseshares is not entitled to the protection of I.C. 26–1–9–307 since it never actually purchased anything. As we found in the previous issue, the transaction between Leaseshares and Boone was merely a financing arrangement. Such arrangement created a security interest which Leaseshares then failed to perfect. Consequently, that interest was then adjudged to be subordinate to the prior perfected security interest of Citizens.

The next issue is whether the trial court properly applied the provisions of I.C. 26–1–9–306(2) to this case. Leaseshares argues that because Boone was allowed to sell the cars he had on the floor plan without paying Citizens first, Citizens lost its security interest in those vehicles as against a third party who was a bona fide purchaser. It cites I.C. 26–1–9–306(2) which reads:

> "Proceeds"—Secured party's rights on disposition of collateral—(1) "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks

and the like are "cash proceeds". All other proceeds are "non-cash proceeds". (2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

■ Leaseshares's contention must fail for two reasons. First, before Leaseshares may prevail, it must be shown that they acquired the autos from a sale. As we found previously, there was, in fact, no sale, but a security arrangement. Secondly, even if Citizens lost its security interest as alleged, Leaseshares never perfected its security interest. One way of perfecting a security interest is by possession. *See,* U.C.C. Art. 9. If neither party had a previously perfected security interest, then Citizens would again win because it had possession.

■ The next issue is whether the trial court properly applied the provisions of I.C. 26–1–9–301 to this case. Leaseshares contends that even if it was not a buyer in the ordinary course of business, it should still prevail under I.C. 26–1–9–301 which in pertinent part reads as follows:

> (1) Except as otherwise provided in subsection (2) an unperfected security interest is subordinate to the rights of (1) In the case of goods, ... a person who is not a secured party and who is a ... or other buyer not in the ordinary course of business to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;

According to 9–301, there must have been a "delivery of the collateral" which, here cannot be shown. The four automobiles never left Boone's place of business at all. There was never a change of posses-

sion between Boone and Leaseshares or a delivery by Boone to Leaseshares. The only transaction which could even be considered a delivery was when Boone picked up two of the certificates of origin and had two of the autos titled into Leaseshares's name. However, even this occurred after Citizens had perfected by filing its financing statement on December 2, 1982. Consequently, Leaseshares's argument must again fail.

■ Leaseshares now contends that the trial court improperly applied I.C. 32-2-1-7. I.C. 32-2-1-7 reads as follows:

Sale of goods without delivery—Every sale made by a vendor, of goods in his possession or under his control, unless the same be accompanied by immediate delivery, and be followed by an actual change of the possession of the things sold, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or subsequent purchasers in good faith, unless it shall be made to appear that the same was in good faith and without any intent to defraud such creditors or purchasers.

From this, the trial court concluded that the sale between Boone and Leaseshares was fraudulent and void since there was no delivery or change of possession. The court's conclusion was based upon the failure of Leaseshares to rebut the presumption of fraud set up by I.C. 32-2-1-7.

In its brief, Leaseshares's only reference to facts rebutting the presumption of fraud is that Leaseshares paid $29,200 for the cars. Citizens had a right to rely on this presumption, and the court was entitled to make such a conclusion until Leaseshares rebutted that presumption. *See, North v. Jones* (1912) 53 Ind.App. 203, 100 N.E. 84.

The trial court found in conclusions of law #2 and #12 that Leaseshares could only have perfected its title in the cars and thus defeat Citizens's claim by having filed a financing statement. Leaseshares argues that according to I.C. 26-1-9-302(3)(b) and I.C. 26-1-9-302(4) it could only have perfected by notation on the certificate of title and not through the filing of a financing statement. I.C. 26-1-9-302(3)(b) provides in pertinent part:

The following provisions of this article do not apply to a security interest ... or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof.

I.C. 26-1-9-302(4) further provides:

A security interest in property covered by a statute described in subsection 3 can be perfected only by registration or filing under that statute or by indication of the security interest ownership on the certificate of title or a duplicate thereof by a public official.

■ The Indiana Comments to I.C. 26-1-9-302 deal with some of the problems flowing from the language of 9-302(3), (4). At the time of codification, it was realized that some uncertainty may arise as to whether a security interest in motor vehicles may be adequately perfected upon a certificate of title. A reading of the Comments dealing with the problems related to 9-302(3) and corresponding case law indicate to us that the motor vehicles held as inventory in this case are not excluded from article nine filing provisions.

■ I.C. 26-1-9-302(3)(b) excludes all but motor vehicles held as inventory for sale. However, whether the inventory is held for sale or for rent seems to be a technicality which, at least in this case is irrelevant, since there is no evidence showing that an official or employee of the Bureau of Motor Vehicles made the notation upon the certificate of title. A mere notation upon the title without registering with the Bureau of Motor Vehicles is insuf-

ficient to perfect a security interest.[1] *See,* Indiana Comment to I.C. 26–1–9–302.

■■■■ The purpose of subsection (4) is to make clear that indication of the security interest upon the certificate of title by a public official will take the place of filing or perfection by means other than possession. Here, there was no notation by a public official, no perfection by filing, and no possession. Leaseshares's interest is clearly subordinate to Citizens who had perfected its interest by refiling.

Leaseshares further argues that the trial court erred in finding Leaseshares negligent and awarding damages to Citizens. In so doing, the trial court found that both Leaseshares and Liberty were under a statutory duty to title and register the four cars in question under I.C. 9–1–2–1 *et seq.* and I.C. 9–1–4–1 *et seq.* It also found that Leaseshares failed to follow a standard of reasonable behavior as a prudent lessor.

In its brief, Leaseshares states that these findings and conclusions are not supported by the evidence or the law. However, Leaseshares has failed to show us how they are contrary to the law or the evidence. Such a statement, without more, is insufficient to justify a reversal. The only case law cited in support of its contentions are a couple of cases on contributory negligence. Leaseshares merely makes the statement that the application of common law and statutory negligence is inconsistent with the statutory primary to the given of the U.C.C.

■■■■ We note that according to our standard of review, we will not set aside the findings or judgment unless they are clearly erroneous. Here, Citizens has set forth evidence and case law supporting the trial court's decision. Consequently, we cannot hold that the judgment is clearly erroneous. Also, it is not our function on

appeal to reweigh the evidence nor judge the credibility of witnesses. Thus, we defer to the trial court's judgment on this issue. *See,* T.R. 52(A).

■■■■ Next, Leaseshares contends that the trial court erred in failing to consider depositions taken in this matter prior to its judgment. However, the record shows that Leaseshares failed to raise this contention in its motion to correct errors. Consequently, this issue is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *City of Michigan City v. Lake Air Corp.,* (1984) Ind.App., 459 N.E.2d 760.

■■■■ The last issue is whether the trial court erred in refusing to dismiss Citizens's counterclaim. Paragraph 6 of Citizens's counterclaim was based on a theory of negligent misrepresentation. Leaseshares filed a motion to dismiss stating that this is not a recognized theory of recovery in Indiana.

Although negligent misrepresentation may not be a recognized theory of recovery, simple negligence is a recognized theory. Paragraph 5 of the counterclaim is an allegation of simple negligence and reads as follows:

> That plaintiff, United Leaseshares, Inc., was negligent in failing to obtain certificates of title to the four automobiles in a timely manner.

Citizens filed a response to Leaseshares's motion to dismiss and stated that it was not proceeding under a theory of negligent misrepresentation. Also, in a discussion before the trial court, Citizens made it clear that it was proceeding under a theory of "simple negligence".

A ruling on the motion to dismiss was postponed until the close of the evidence. Citizens introduced evidence on the basis of

---

**1.** *Compare White v. Household Finance Corp.,* (1973) 158 Ind.App. 394, 302 N.E.2d 828 where the mere fact that a certificate of title was in the homes of the buyer and his uncle and listed the finance company as legal owner did not create a security interest enforceable against the uncle.

simple negligence and no objections were made. Thus, based upon paragraph 5 of the counterclaim and the evidence presented, we find no error in the trial court's refusal to dismiss. Any error in this regard would have been cured by T.R. 15(B) concerning amendments to conform to the evidence.[2]

For the reasons stated above, we affirm the judgment of the trial court.

NEAL, P.J., and RATLIFF, J., concur.

2. (B) Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.