

**ATTORNEY FOR APPELLANT**

Jason M. Massaro
The Massaro Legal Group, LLC
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Jeffrey L. Beck
Beck Rocker & Habig, P.C.
Columbus, Indiana

Matthew T. Albaugh
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vic's Antiques and Uniques, Inc., *Appellant-Defendant,* <br><br> v. <br><br> J. Elra Holdingz, LLC, *Appellee-Plaintiff.* | February 18, 2020 <br><br> Court of Appeals Case No. 19A-SC-1348 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Special Judge <br><br> Trial Court Cause No. 03D02-1902-SC-177 |

**Najam, Judge.**

## Statement of the Case

[1]     Vic's Antiques and Uniques, Inc. ("Vic's") appeals from an order of possession entered in a small claims eviction proceeding, which required that Vic's vacate real estate owned by J. Elra Holdingz, LLC ("J. Elra"). Vic's raises one

dispositive issue for our review, namely, whether the court erred when it held that an agreement between Vic's and J. Elra is a lease subject to an eviction proceeding rather than a land sale contract. We hold that, in its operation and effect, the agreement between Vic's and J. Elra is a land sale contract and that the claim asserted is not a possessory action between a landlord and a tenant. We also hold that the value of the property sought to be recovered exceeds the jurisdictional limit of a small claims court. Thus, the small claims court lacked jurisdiction over the agreement, and we vacate the order and remand with instructions to dismiss the claim.[1]

## Facts and Procedural History

[2] On March 22, 2018, J. Elra and Vic's entered into a "Lease Agreement" ("the agreement") for a building and 3.56 acres of property ("the real estate"). Appellant's App. Vol. II at 9. Under the agreement, Vic's agreed to pay J. Elra $1,265.30 per month for a term of twenty years. The agreement included a provision which granted Vic's an option to purchase the real estate plus an additional six acres (collectively, the "option property") for a purchase price of $1.00 upon the successful completion of the agreement.

[3] In the alternative, Vic's could purchase the option property before the end of the twenty-year term if J. Elra were to refinance the property, which was subject to

---

[1] We held oral argument in this case on January 23, 2020, in Indianapolis. We thank counsel for their excellent advocacy.

a mortgage, or to sell any portion of the property, or if J. Elra's mortgage were released. If Vic's exercised the option prior to the end of the term, the remaining monthly payments would be accelerated and the purchase price would equal the total of the remaining monthly payments, plus $1.00. And the agreement provided that, if Vic's exercised its option to purchase the option property, J. Elra would provide title insurance in the amount of $200,000 and a warranty deed. *See id.* at 11.

[4] On January 21, 2019, J. Elra sent Vic's a letter in which J. Elra asserted that Vic's had breached various provisions of the agreement. And on February 15, J. Elra filed a small claim for an eviction based on unpaid rent, unpaid taxes, failure to maintain the leased premises, and failure to provide proof of insurance, as well as a claim for $6,000 in damages.

[5] Thereafter, on May 24 and 29, the small claims court held a hearing on J. Elra's claim for possession of the real estate. At the beginning of the hearing, J. Elra withdrew its claims that Vic's had failed to make rent payments and to pay the real estate taxes. However, J. Elra proceeded with its claims that Vic's had "unlawfully retained possession" of the real estate in that Vic's had failed to provide proof of insurance and had failed to maintain the premises. *Id.* at 8. In addition, J. Elra sought to evict Vic's based on alleged breaches that had occurred since the filing of the claim, namely, that Vic's had placed a lock on J. Elra's gate to an adjacent property occupied by J. Elra and that Vic's had failed to comply with local zoning ordinances.

[6]     At the hearing, Aaron Ferguson, the president of J. Elra, testified. On cross-examination, Vic's attempted to question Ferguson about the formation of the agreement. Specifically, Vic's asked Ferguson if the agreement "actually arises out of a prior litigation between J. Elra and Vic's[.]" Tr. Vol. II at 22. At that point, J. Elra objected to Vic's question on the ground that it was "related to the prior litigation," which litigation had been dismissed with prejudice. *Id*. at 22-23. The small claims court sustained J. Elra's objection.

[7]     Vic's then made an offer of proof in which it asserted that the court needed the "context and background" of the prior litigation in order to "understand" that the agreement is not a lease subject to an eviction proceeding but, instead, a land sale contract styled as a lease. *Id*. at 24. In particular, Vic's stated that J. Elra and Vic's had mediated a prior dispute and that "[t]hat's where the lease came from." *Id*. Vic's further offered to prove that, at mediation, the parties "had to work around the fact that there was a lender involved" and as a result they "came to" a document that was a land sale contract "framed" as a lease with an option to purchase. *Id*. Following Vic's offer of proof, the court "agree[d]" with J. Elra that the document was a lease and continued with the eviction proceeding. *Id*. at 25. After the hearing, the small claims court entered

an order that Vic's vacate the real estate and scheduled a hearing on J. Elra's claim for damages. This interlocutory appeal ensued.[2]

# Discussion and Decision

[8] Vic's appeals the small claims court order that Vic's vacate the real estate. As this Court has recently stated:

> Pursuant to Trial Rule 52(A), the findings or judgments rendered by a small claims court are upheld unless they are clearly erroneous. Because small claims courts were designed to dispense justice efficiently by applying substantive law in an informal setting, this deferential standard of review is particularly appropriate. We consider the evidence most favorable to the judgment and all reasonable inferences to be drawn from that evidence. However, we still review issues of substantive law *de novo*.

*N. Ind. Pub. Serv. Co. v. Josh's Lawn & Snow, LLC*, 130 N.E.3d 1191, 1193 (Ind. Ct. App. 2019) (citations omitted).

[9] This appeal presents an issue of substantive law, namely, whether the small claims court erred when it interpreted the agreement as a lease rather than a land sale contract. Further, in light of our holding on that issue, we must also

---

[2] Vic's brought this appeal pursuant to Indiana Appellate Rule 14(A)(4), which allows a party to bring an interlocutory appeal as a matter of right when the court issues an order for the delivery of the possession of real property.

address whether the small claims court had subject matter jurisdiction over the agreement.

### *Issue One: Interpretation of the Agreement*

[10]     Vic's contends that the small claims court erred when it evicted Vic's. Specifically, Vic's contends that the small claims court incorrectly deemed the agreement to be a lease subject to an eviction proceeding rather than a land sale contract. To resolve this issue on appeal, we must interpret the agreement. It is well settled that the

> [c]onstruction of the terms of a written contact generally is a pure question of law. The goal of contract interpretation is to determine the intent of the parties when they made the agreement. This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. If contract language is unambiguous, this court may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument.

*Layne v. Layne*, 77 N.E.3d 1254, 1265 (Ind. Ct. App. 2017) (citations omitted).

[11]     Here, Vic's contends that the agreement is unambiguously a land sale contract rather than a lease because it "provides for an amortized payment schedule," requires that Vic's pay real estate taxes on both the real estate and the additional six acres, and "provides for the payment of money to Vic's in the

event of a taking" by the State. Appellant's Br. at 17. And Vic's maintains that those provisions are "entirely consistent with a land contract[.]" *Id*. at 23.

[12] But J. Elra asserts in its brief on appeal that the agreement is unambiguously a lease because it "is entitled 'LEASE AGREEMENT' in all capital letters, at the top center of the first page," it identifies the parties as "Lessor" and "Lessee," the "term of the lease" is twenty years, and it calls for monthly "rent payments." Appellee's Br. at 11. We note, however, that at oral argument, a different counsel for J. Elra readily acknowledged our Supreme Court's holding in *Rainbow Realty Group, Inc. v. Carter* that "the transaction's purported form and assigned label do not control its legal status." 131 N.E.3d 168, 173 (Ind. 2019). In addition, the instrument itself includes a standard provision that the headings used by the parties "are for convenience only and do not define, limit, or construe the contents" of the agreement. Appellant's App. Vol. II at 20. We do not hesitate to conclude that the agreement is not a lease simply because it is labeled a "lease"; because it includes terms such as "lessor," "lessee," and "rent"; or because it includes a paragraph heading entitled "demised premises."

[13] At oral argument, J. Elra correctly stated that, once executed, a land sale contract is a present sale and purchase. *See Skendzel v. Marshall*, 301 N.E.2d 641, 646 (Ind. 1973). And J. Elra also correctly noted that, in a land sale contract, all incidents of ownership are transferred to the purchaser. *See id*. Based on those premises, J. Elra argued that the agreement is unambiguously a lease because various provisions in the agreement indicate that J. Elra did not transfer all incidents of ownership to Vic's and, thus, that the agreement created

a landlord-tenant relationship between the parties.[3] Further, J. Elra maintained that there are "many similarities" between provisions in the agreement in this case and provisions in the agreement in *Rainbow Realty Group* that was found to be a residential lease. Oral Argument at 35:27-35:33.

[14] Indeed, J. Elra contended, in effect, that certain clauses in the agreement are found only in leases. Specifically, J. Elra maintained that the agreement was a lease because it: (1) limited Vic's use of the real estate to the operation of an antique store; (2) required Vic's to obtain J. Elra's written approval before it could construct any improvements on the real estate; (3) allowed J. Elra to enter the property upon the termination of the agreement; (4) required Vic's to obtain written approval from J. Elra prior to constructing any signs; (5) provided that Vic's could remove business fixtures at the expiration of the term; (6) allowed J. Elra to enter the real estate at any time in order to inspect the property; (7) required Vic's to surrender the property at the expiration of the term; and (8) prohibited Vic's from assigning or subletting the real estate without J. Elra's prior written consent.

---

[3] We observe that J. Elra did not reference our Supreme Court's holding in *Skendzel* in its brief on appeal, nor did it advance any arguments based on that holding. For the first time at oral argument, J. Elra acknowledged *Skendzel* and stated that it was an excellent source for this Court to determine what is a land sale contract. *See* Oral Argument at 27:05-27:11.

We acknowledge that such provisions are often included in lease agreements. *See Rainbow Realty Group, Inc.*, 131 N.E.3d at 174.[4] However, those provisions are also not incompatible with a land sale contract. In *Skendzel*, our Supreme Court stated that, "in effect," a land sale contract is "a sale with a security interest in the form of legal title reserved by the vendor" and that the "retention of the title by the vendor is the same as reserving a lien or mortgage." 301 N.E.2d at 646. In other words, in a land sale contract, the vendor retains legal title to the real estate until the vendee pays the total contract price. *See id.* And the *Skendzel* Court expressly held that a land sale contract is "in the nature of a secured transaction." *Id.* at 650.

Because the vendor retains a present interest in the real estate until the debt has been paid in full, as a secured creditor the vendor may require reasonable limitations on nonessential incidents of ownership to protect its security interest in the real estate. The agreement gave Vic's the exclusive possession and use of the real estate, and the provisions that enabled J. Elra to protect its security interest—for example, the right to enter and inspect the real estate and the requirement of approval before improvements are made—did not deprive Vic's of its possessory or beneficial interest. And both a landlord and a land sale vendor would have the same legitimate reason to be concerned about compliance with zoning and with maintenance of the property whether the

---

[4] Neither party addressed the Supreme Court's opinion in *Rainbow Realty Group, Inc.* in their briefs on appeal. However, in our order setting oral argument, we directed both parties to read and to be prepared to discuss that case.

property was leased or sold. The provisions in the agreement cited by J. Elra do not point unerringly to a lease. Rather, similar or equivalent provisions are also present in a typical land sale contract.

[17] The agreement does require that Vic's only use the property as an antiques store and that Vic's not assign or "sublet" its interest without J. Elra's prior written consent, but those are reasonable conditions where, as here, J. Elra's own business is located next door and J. Elra is extending credit to Vic's and to no one else. When one party extends credit to another, there are usually conditions attached. Indiana courts have long recognized and respected the freedom to contract. *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1167 (Ind. 1998). And, as counsel for J. Elra acknowledged at oral argument, "[p]arties are free to contract however they want to fashion their contract." Oral Argument at 24:09-24:13. Under the agreement, J. Elra reserved a present interest in the real estate equivalent to a lien or mortgage and, as such, was entitled to include reasonable terms and conditions to protect itself from waste or other impairment of its collateral.

[18] As mentioned above, our Supreme Court has recently held that a "transaction's purported form and assigned label do not control its legal status." *Rainbow Realty Group, Inc.*, 131 N.E.3d at 173. This is the very principle underlying the holding in *Skendzel*, where the Court declined "to pay homage to form over substance." *Skendzel*, 301 N.E.2d. at 646. Thus, to determine whether the agreement is a lease or a land sale contract, we must look beneath the surface of the agreement and, instead, consider the substance of the agreement to

determine the intent of the parties. We hold that, on the facts of this case, the agreement speaks for itself. As such, we need not look to extrinsic evidence to interpret the agreement. *See Layne*, 77 N.E.3d at 1265. Rather, the substance of the agreement is found in the economics of the transaction. And the economics of the transaction demonstrate that the agreement is unambiguous and is a land sale contract rather than a lease.

[19] Here, J. Elra would retain legal title to the real estate until Vic's had made all of the monthly payments, at which time Vic's was granted an "option to purchase . . . for a purchase price of One Dollar ($1.00)." Appellant's App. Vol. II at 10. Nevertheless, the agreement required J. Elra to obtain a title insurance policy in the amount of $200,000. Just as a loan policy of title insurance is issued in the amount of the mortgage, an owner's policy of title insurance is issued in the amount of the purchase price. J. Elra has failed to reconcile the discrepancy between the purported "purchase price of One Dollar ($1.00)" and the actual purchase price of $200,000 as shown by the owner's policy of title insurance the parties agreed would be issued.

[20] In addition, in order to exercise its $1.00 "option to purchase," Vic's must first have paid a sum equal to 240 monthly payments of $1,265.30, or a total of $303,671.63, which is $103,671.63 more than the purchase price. J. Elra has failed to account for this additional payment. A simple calculation confirms that this amount represents interest on the $200,000 purchase price.

[21] Amortization is the payment of a debt with interest over time. The agreement provides for the amortization of $200,000 in principal payable in 240 monthly payments of exactly $1,265.30. Solving for the interest rate yields a rate of 4.5%. This amortization is the Rosetta Stone that unpacks and reveals the nature of the agreement. All four of these factors—the principal amount, the number of monthly payments, the amount of each monthly payment, and the interest rate—are integral to the amortization schedule, and each factor depends upon the others.

[22] Interest represents the time value of money. *Reese v. Reese*, 696 N.E.2d 460, 463 (Ind. Ct. App. 1998). And, it is well settled that "interest follows principal[.]" *Indianapolis Pub. Hous. Agency v. Aegean Constr. Servs. Inc.*, 755 N.E.2d 237, 241 (Ind. Ct. App. 2001). While contract purchasers pay interest on the unpaid principal balance of a land sale contract, lessees do not pay interest on future rent payments. Here, the four factors comprising the amortization show that the monthly payments were not "rent payments" but contract payments of principal and interest on a fully amortized land sale contract.

[23] The $1.00 "purchase price" at the end of the 240 monthly payments also demonstrates that the agreement was a land sale contract rather than a lease. On this issue, we find a recent opinion from another jurisdiction to be instructive. In *Enz v. Raelund,* the Montana Supreme Court considered whether a real estate agreement was a contract of sale or a lease. 419 P.3d 674, 685 (Mont. 2018). In concluding that the agreement was a lease, the Court relied in part on the fact that the lessee was required to pay a significant amount of

money at the end of the term in order to own the property. The court distinguished the facts in *Enz* from the facts in an earlier case, *Pollard v. City of Bozeman*, 741 P.2d 776 (Mont. 1987), and held:

> In *Pollard*, we determined that an ambiguous real estate agreement was a contract for sale where, at the conclusion of the leased term, the tenant could purchase the property for the nominal consideration of $10.00. We noted that the 'lease' required the lessee to pay as compensation for the lease 'a sum substantially equivalent to or in excess of its value' after which, for nominal consideration, it would own the property. *Pollard*, 228 Mont. at 181-82, 741 P.2d at 779-80. Here, at the end of the Lease, the Raelunds would not own the property for nominal additional consideration, but rather would either owe an additional $239,900, or assume the existing mortgage.

*Enz*, 419 P.3d at 685. Here, as in *Pollard*, during the term of the agreement Vic's was required to pay a sum in excess of the purchase price, after which Vic's could purchase both the real estate and an additional parcel for nominal consideration. The $1.00 option payment is a token and insignificant consideration required only to trigger the issuance of a title insurance policy and a warranty deed.

[24] Years earlier, this Court reached the same conclusion as the Montana Supreme Court in the analogous context of a lease of goods. In *United Leaseshares, Inc. v. Citizens Bank & Trust Co.*, we considered whether a lease with an option to purchase clause was a lease "intended as security." 470 N.E.2d 1383, 1387 (Ind. Ct. App. 1984). In making that determination, the Court stated that the "primary issue" to be decided was whether the agreement was in effect a

conditional sale in which the "lessor" retained an interest in the goods as security for the purchase price. *Id*. We noted that, by defining a "security interest" to include a lease intended as security, the drafters of the Uniform Commercial Code ("UCC") intended such a "disguised security interest" to be governed by the same rules that apply to other security interests. *Id*. We further noted that, in that respect, the drafters of the UCC refused to recognize form over substance and concluded:

> In regard to the option to purchase, the courts have also stated that what is to be considered 'nominal consideration' depends upon the particular facts of each case. However, the courts are clear upon one thing, which is that where the terms of the lease and option [to] purchase are such that *the only sensible course of action for the lessee at the end of the term is to exercise the option to purchase* and become the owner of the goods, then the lease becomes one intended to create a security interest.

*Id.* (emphasis added).

[25] The same reasoning applies here. The agreement provides that, after Vic's has paid $303,671.63, it will have the option to purchase both the real estate and an additional six acres for a nominal sum. At that point, at the end of the term, "the only sensible course of action" for Vic's will be to exercise the option. *Id*. As such, the "lease" functioned as a security agreement and created a disguised security interest. *See id*.

[26] Thus, essentially the same rules which distinguish a lease from a sale under the UCC apply here. And, under the UCC, "[w]hether a transaction creates a lease

or security interest is determined by the facts of each case." Ind. Code § 26-1-1-201(37) (2019). However, "a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee" and "the lessee has an option to become the owner of the goods for no additional or nominal consideration upon compliance with the lease agreement." I.C. § 26-1-1-201(37)(d). Here, Vic's right to possession and use of the real estate is an obligation for the term of the "lease" not subject to termination by Vic's, and Vic's has an option to become the owner of the option property for the nominal consideration of $1.00.

[27] There is no question that, after Vic's will have paid 240 monthly payments and otherwise performed under the agreement, Vic's would take title to both properties. No reasonable person would pay several hundred thousand dollars and then walk away without paying one additional dollar to complete the transaction. The financial factors revealed in the amortization and the structure of the transaction demonstrate that, if Vic's performed the agreement according to its terms, the parties intended that Vic's would become the owner of the record title to the option property, including both the real estate and the additional parcel.

[28] The instant case can be distinguished on its facts from *Rainbow Realty Group, Inc.* where the parties entered into an initial two-year residential lease which contemplated the execution of a separate land sale contract for the remaining twenty-eight years. 131 N.E.3d at 171. Here, the parties entered into a single

transaction, and the actual sale and purchase of commercial real estate was the only transaction within the contemplation of the parties at the inception of the agreement. There is no other plausible explanation for the transaction. While the agreement contains terms that are consistent with a lease, it is clear from the economics of the transaction that from the outset the parties intended for Vic's to acquire the option property. Accordingly, we can say with confidence that the agreement between J. Elra and Vic's is a land sale contract.

### Issue Two: Subject Matter Jurisdiction

[29] Having concluded that the agreement is a land sale contract, we next address whether the small claims court had jurisdiction to enforce the agreement. As this Court has previously stated:

> Whether a court has the authority to hear a class of cases is a question of the court's subject matter jurisdiction. To have subject matter jurisdiction, either the Indiana Constitution or a statute must confer authority upon a court. If a court does not have subject matter jurisdiction, any judgment it renders is void. Because void judgments may be attacked directly or collaterally at any time, the issue of subject matter jurisdiction cannot be waived and may be raised at any point by a party or by the court *sua sponte*.

*Hoang v. Jamestown Homes, Inc.*, 768 N.E.2d 1029, 1032 (Ind. Ct. App. 2002) (citations omitted). Because the authority granted by a statute is a question of law, we review the question of subject matter jurisdiction *de novo*. *See id*.

Indiana Code Section 33-29-2-4 defines the jurisdiction of the small claims docket of Indiana's superior courts.[5] That statute grants small claims courts jurisdiction to hear the following cases:

> (1) Civil actions in which the amount sought or *value of the property sought to be recovered* is not more than six thousand dollars ($6,000). . . .
>
> (2) *Possessory actions between landlord and tenant* in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000).
>
> (3) Emergency possessory actions between a landlord and tenant under IC 32-31-6.

Ind. Code § 33-29-2-4(b) (emphases added).

Here, J. Elra filed a complaint to evict Vic's from the real estate. Having concluded that the agreement was a land sale contract, it follows that the value of the property sought to be recovered is substantially more than the $6,000 small claims jurisdictional limit. Accordingly, the small claims court did not have jurisdiction to hear the action under Indiana Code Section 33-29-2-4(b)(1). And because the agreement was a land sale contract, it created a relationship between Vic's and J. Elra that is "[r]ealistically" viewed as a "mortgagee-mortgagor" relationship. *Skendzel*, 301 N.E.2d at 646. The agreement did not

---

[5] The small claims court at issue was part of the Bartholomew Superior Court.

create a landlord-tenant relationship. As such, the action was not a possessory action between a landlord and a tenant, and the small claims court did not have jurisdiction to hear J. Elra's claim under Indiana Code Section 33-29-2-4(b)(2) or (3). We hold, therefore, that under the plain language of Indiana Code 33-29-2-4(b), the small claims court did not have jurisdiction to adjudicate the claim, and the court's order of possession is void. *See Hoang*, 768 N.E.2d at 1032.

## *Conclusion*

[32] In sum, notwithstanding provisions in the agreement that are consistent with a lease, those provisions are not inconsistent with the interests of a secured creditor in a land sale contract and do not impinge upon the vendee's possession and beneficial use of the real estate any more than would a conventional mortgage with similar restrictions. The financial provisions demonstrate that the underlying agreement is, in its operation and effect, a land sale contract. And because the claim asserted was not a possessory action between a landlord and a tenant and the value of the property sought to be recovered is greater than $6,000, the small claims court lacked subject matter jurisdiction to enforce the agreement, and the order is void. We therefore

vacate the small claim's court order and remand with instructions for the court to dismiss the claim.[6]

[33] Vacated and remanded with instructions.

Vaidik, J., and Tavitas, J., concur.

---

[6] Vic's asserts that, because the agreement is a land sale contract, J. Elra must pursue a foreclosure action. While the general remedy for a breach of a land sale contract is foreclosure, there are situations where a forfeiture would be an appropriate remedy. On the record in this appeal, we need not consider or decide whether a breach has occurred or whether, if a breach has occurred, foreclosure or forfeiture would be the appropriate remedy.