UNITED STATES of America, Plaintiff,

v.

TOPEKA LIVESTOCK AUCTION, INC., Defendant and Third-party Plaintiff,

v.

William D. BULT and Esther M. Bult, Third-party Defendants.

Civ. No. 73 F 73.

United States District Court, N. D. Indiana, Fort Wayne Division.

Feb. 7, 1975.

---

John Wilks, U. S. Atty., Charles W. Larmore, Charles F. Leonard, Asst. U. S. Attys., Fort Wayne, Ind., for United States of America.

Dann L. Goode, Kansas City, Mo., Paul C. Raver, Sr., Fort Wayne, Ind., for Topeka Livestock Auction, Inc.

Thomas A. Withrow, Indianapolis, Ind., Stephen R. Lea, Phoenix, Ariz., Donald B. Steininger, Fort Wayne, Ind., for William D. Bult and Esther M. Bult.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, Chief Judge.

This is a tort action by plaintiff United States against defendant Topeka Livestock Auction. The complaint charges that defendant as auctioneer sold certain livestock in which plaintiff held a security interest. The livestock sold was security for loans extended by the Farmers Home Administration (FHA) to the owners of the livestock, William and Esther Bult. As these loans are now in default, the sale of the livestock by defendant auctioneer is alleged to make defendant liable for conversion in the amount of the unpaid balance of the loans. Defendant by its amended answer brought in the owners of the livestock and debtors on the FHA loans, William and Esther Bult, as third-party defendants pursuant to Rule 14 of the Federal Rules of Civil Procedure.

This cause is now before the court on the following motions:

1. Motion for summary judgment filed by plaintiff United States on January 7, 1974; and

2. Motion by third-party defendants, filed March 5, 1974, to set aside a "default judgment" entered by the Clerk of this court on February 11, 1974.

For reasons set forth below, the motion of plaintiff for summary judgment will be granted, and the motion of third-party defendants to set aside the default will be denied.

### Background

The plaintiff, through the FHA and pursuant to authority granted by 7 U.S.C.A. § 1921 et seq., made two farm operating loans, in July, 1969, and January, 1970, to third-party defendants William and Esther Bult. These loans were secured by a security agreement dated February 5, 1970, which gave plaintiff a security interest in livestock then owned by the Bults and in all livestock later acquired by them. This security interest was perfected by a financing statement filed in the proper office in August, 1969.

The complaint alleges that on February 15, 1972, without the consent of plaintiff, third-party defendants sold 57 head of livestock, valued at $22,145.96, through the defendant Topeka Livestock Auction, Inc., a livestock auctioneer. The complaint further alleges that the Bults are in default on the FHA loans in the amount of $6,677.88 of principal plus accrued interest. Plaintiff now brings this action against defendant auctioneer claiming defendant is liable in tort for converting property in which plaintiff held a perfected security interest.

### Plaintiff's Motion for Summary Judgment

Plaintiff has accompanied its motion for summary judgment with copies of promissory notes evidencing the loans to the third-party defendants, and with copies of the security agreement between plaintiff and third-party defendants, the financing statement perfecting that security agreement, and the FHA's current statement of account showing the balance and interest due on the loans. Plaintiff has also submitted an affidavit from one Ned Metzger, the County Supervisor for the FHA for the relevant county. Metzger avers that "to the best of his knowledge, neither he nor anyone else in his office consented to any sales of livestock" by third-party defendant William Bult prior to February 22, 1972. Metzger further avers that one Paul Hostetler, the officer manager for defendant auctioneer, told him that defendant paid $22,145.96 to William Bult to cover the sale of 57 cows on February 15, 1972, and that Hostetler sent him copies of the sales receipts. These copies are attached to the Metzger affidavit.

Despite three different extensions of time granted by the court for defendant to file a response to the government's motion for summary judgment, the defendant has not done so. Therefore, plaintiff's allegations which are supported by the evidentiary submissions will be taken as true.

The only question of any difficulty in ruling on plaintiff's motion for summary judgment is that of determining what body of law, state or federal, governs this case. Involved are issues concerning security interests held by the United States under an FHA loan program, and the tort liability of auctioneers charged with converting property in which the government held such an interest. There is a split in authority among the United States Courts of Appeals as to which law governs such cases, and there is no precedent in this circuit. Holding that federal law controls are United States v. Sommerville, 324 F.2d 712 (3rd Cir. 1963); United States v. Hext, 444 F.2d 804 (5th Cir. 1971); United States v. Carson, 372 F.2d 429 (6th Cir. 1967); and Cassidy Commission Company v. United States, 387 F.2d 875 (10th Cir. 1967). Holding that state law controls are United States v. Union Livestock Sales Company, 298 F.2d 755 (4th Cir. 1962); and United States v. Kramel, 234 F.2d 577 (8th Cir. 1956). However, although this court is inclined to the view that the judicial de-

velopment of federal common law to govern the issues involved is neither compelled by the nature of the federal interest involved nor warranted by the congressional intent behind the Farmers Home Administration legislation, *see especially*, the concurring opinion of Judge Steel in United States v. Sommerville, *supra*, it is not necessary for the court to decide the issue in this case. No matter which law governs, state or federal, the outcome in this cause is the same. *Cf.* Duvall-Wheeler Livestock Barn v. United States, 415 F.2d 226 (5th Cir. 1969).

■ Every Federal Court of Appeals holding that federal law controls the issue of the liability of an auctioneer who sells property in which the government holds a perfected security interest has concluded that the auctioneer is liable for conversion. *Sommerville, supra; Carson, supra; Cassidy Commission Company, supra*. The most closely analogous Indiana law is to the same effect. In Fort v. Wells, 14 Ind.App. 531, 43 N.E. 155 (1896), the state court held general commission livestock salesmen liable in conversion for selling on commission, in good faith, livestock which in fact was stolen. Recent Indiana law shows no drift away from conversion as a strict liability tort, in which the actor's intent and knowledge are irrelevant to his liability. Indianapolis Saenger Choir, Inc. v. American Fletcher National Bank and Trust Company, 149 Ind.App. 665, 274 N.E.2d 728 (1971); Sikora v. Barney, 138 Ind.App. 686, 207 N.E.2d 846 (1965). Therefore, the court has no doubt that if confronted squarely with the issue, the Indiana courts would follow the "great weight of authority" among the states in holding that

"a sale by an auctioneer for a principal . . . who holds [the property] subject to a mortgage or other lien . . . entails liability to the . . . lienor, . . . as for a conversion, on the part of the auctioneer who sells it under such circumstances, pays over the proceeds to the principal, and hands the property over to the purchaser with a view to passing the title to him, notwithstanding the auctioneer acts without knowledge of the principal's lack of authority to sell."

Annot., 96 A.L.R.2d 208, 210 (1964).

■ Likewise, there is no difference in the measure of the extent of liability between federal and state law; the measure is the fair market value of the property at the time the conversion took place (rather than the amount retained by the converter). *Carson, supra*, 372 F.2d at 433; *Sikora, supra*; Miller v. Long, 126 Ind.App. 482, 131 N.E.2d 348 (1956).

■ Finally, between state and federal law, there is no difference in answer to the question of whether the government held a perfected security interest in the property sold by the defendant. The relevant Indiana law is the Uniform Commercial Code as adopted in Indiana for secured transactions. Burns Ind.Stat.Ann. § 19–9–101 et seq.; IC 1971, 26–1–9–101 et seq. The Uniform Commercial Code on secured transactions has been judicially adopted as the federal common law as well. *Hext, supra*. It is true that there are many significant differences between the UCC on secured transactions as adopted in Indiana, and the current "idealized" version of the American Law Institute and the National Conference of Commission's on Uniform State Laws; *compare* Burns Ind.Stat.Ann. § 19–9–101 et seq. *with* Uniform Commercial Code § 9–101 et seq. (Official Text 1972) (hereinafter "U.C.C.1972"). And certainly one of the problems with judicially "enacting" a body of law such as the U.C.C. *Hext, supra*, is that of determining which version of the U.C.C. is deemed to be the federal law. However, under any version of the U.C.C., the government in this case held a perfected security interest in the Bults' livestock. The promissory notes, security agreement, and the filed financing statement are sufficient to give the government a perfected security interest in the livestock sold by de-

fendant. U.C.C.1972 §§ 9–201, 9–203(1, 2), 9–204(1), 9–302(1), 9–303, 9–401(1); Burns Ind.Stat.Ann. §§ 19–9–201, 19–9–203(1, 2), 19–9–204(1), 19–9–302(1), 19–9–303; 19–9–401(1); IC 1971, 26–1–9–201, 26–1–9–203(1, 2), 26–1–9–204(1), 26–1–9–302(1), 26–1–9–303, 26–1–9–401(1). Under either version of the Uniform Commercial Code, the "after-acquired" livestock provision is proper. U.C.C.1972 § 9–204(3); Burns Ind.Stat.Ann. § 19–9–204(3). The description of the livestock as collateral is adequate in the security agreement, U.C.C.1972 § 9–110; Burns Ind. Stat.Ann. § 19–9–110; IC, 26–1–9–110 and is adequate in the financing statement, U.C.C.1972 § 9–402(1); Burns Ind.Stat.Ann. § 19–9–402(1); IC, 26–1–9–402(1). The financing statement was properly filed in the county of the debtor's residence, Burns Ind.Stat.Ann. § 19–9–401(1)(a). The financing statement was filed August 20, 1969, and the security agreement covering both loans was signed February 5, 1970. Both events transpired long before the date of the sale by defendant—February 15, 1972.

Defendant in its answer raises certain other defenses, but these present no obstacle to granting the plaintiff a summary judgment. Defendant first asserts that the government consented to the sale of the livestock and thereby waived, or alternatively is estopped from claiming, its lien. But the security agreement between the plaintiff and third-party defendants expressly provides that the Bults would not sell or otherwise dispose of the collateral without the prior written consent of the secured party. And in the record now before the court—which includes plaintiff's and third-party defendants' answers to defendants' interrogatories—it is clear and uncontested that no consent, written or otherwise, to the Bults' disposal of the livestock was given by the plaintiff prior to the sale at issue.

Another defense raised by defendant is that the livestock sold was not the same livestock as was covered by the financing statement and security agreement. There is no evidence in the record to support this claim, and it is clear from the materials and answers to defendant's interrogatories that the livestock sold was indeed the same as those in which the government held a security interest. ·

■ Defendant further answers that it sold the livestock free of any security interest pursuant to the U.C.C. provision covering a buyer in the ordinary course of business, U.C.C.1972 § 9–307(1); Burns Ind.Stat.Ann. § 19–9–307(1), IC 1971, 26–1–9–307(1). But this section is of no help to defendant as it expressly excludes the purchase of farm products from a person engaged in farming operations, and "farm products" include livestock. U.C.C.1972 § 9–109(3); Burns Ind.Stat.Ann. § 19–9–109(3), IC 1971, 26–1–9–109(3).

■ Defendant further answers that it expressly agreed with third-party defendants that it was not third-party defendants' agent. Even if this were true, and there is no evidence in the record to support the claim, it would be of no consequence. The only issue is the tort liability of an auctioneer selling commodities which the owner is not legally able to sell because of an outstanding lien. The law here is clear and thoroughly detailed above.

Defendant's final defense is to plead the statute of limitations. The applicable statute of limitations is either three or six years, depending on whether this cause of action is one for "conversion of property of the United States." 28 U. S.C.A. § 2415(b). In any event there is no basis for this defense as the tortious sale occurred on February 15, 1972, and the government filed its complaint in this cause on September 11, 1973.

Therefore, this court will grant summary judgment in favor of plaintiff and against defendant. As plaintiff and defendant have entered into a stipulation that the amount of damages, if any, awarded in this cause should be $5,333.-

92, this will be the amount of judgment entered by the court.

### Third-Party Defendants' Motion to Set Aside Default Judgment

Defendant, with leave of this court, filed a third-party complaint on October 25, 1973, against the Bults, the debtors on the FHA loans and the owners of the livestock sold by the defendant. According to the return appearing in the record, service was effected on the Bults on November 2, 1973. Under Rule 12 of the Federal Rules of Civil Procedure, an answer to the third-party complaint should have been served within 20 days; that is, by November 22, 1973. On February 11, 1974, the defendant and third-party plaintiff requested the entry of a default by the clerk of this court on the grounds that no answer by the third party defendant had been served. The clerk made the entry of default the same day. On March 5, 1974, third-party defendants moved that this court set aside the "default judgment." [1]

 In passing on this motion it is first necessary to note that an entry of default, and not a default judgment, appears in the record before the court. The two concepts are distinct and must be treated separately, see Rule 55(c) of the Federal Rules of Civil Procedure; 10 C. Wright & A. Miller, Federal Practice & Procedure §§ 2682, 2692 (1973). Much of third-party defendants' argument in its brief in support is relevant only to setting aside a default judgment, rather than a default entry. The argument as to the propriety of the clerk entering a default when no sum certain is involved has application only to default judgments entered pursuant to Rule 55(b)(1), and not to defaults entered under Rule 55(a).

Similarly, the Soldiers' and Sailors' Relief Act requirement that an affidavit stating certain facts be filed, 50 U.S.C. A. § 520 (App.), applies only to default judgments.

 As to the setting aside of a default entry, the basic elements usually advanced in support of such a motion—sufficient excuse for the default, quick action to correct by the defaulting party, allegation of a meritorious defense—are the same as when relief is sought from a default judgment, Wright & Miller, supra, § 2692. However, the tests are less stringently applied in the case of a default entry, Broder v. Charles Pfizer & Company, 54 F.R.D. 583 (S.D.N.Y.1971). For example, even "inadvertence," if facts establishing it are shown, may provide an excuse legally sufficient to set aside a default entry under Rule 55(c). Teal v. King Farms Company, 18 F.R.D. 447 (E.D.Pa.1955). But no excuse which is legally sufficient is even claimed with any specificity in the record now before the court. The claim that third-party defendants were not served with a copy of the original complaint at the time they were served with the summons and third-party complaint goes to, if anything, the question of sufficiency of the pleadings, and is no excuse for a failure to answer. The only possibly valid excuse now appearing in the record is the claim that at the time they were served with the complaint, third-party defendants were actively negotiating with the plaintiff, attempting to settle the debt underlying this case. But in support of this claim, the court is referred to an "Exhibit E," an exhibit which nowhere appears in the record. And in any event, it has been said that ongoing settlement negotiations are not

---

1. After third-party defendants' motion to set aside the default was filed, but before the court had ruled on the motion, defendant and third-party plaintiff moved for leave of court to amend its third-party complaint. This motion was granted by the court on April 9, 1974 and an amended complaint was filed April 23, 1974. The granting by the court of this motion to amend in no way passed on the merits of third-party defendants' motion to set aside the default, and does not affect the ruling on that motion here. The court does note that the default, and any subsequent default judgment entered by the court, would be, of course, addressed only to the original third-party complaint filed October 25, 1974.

a sufficient reason for a failure to file an answer. Mitchell v. Eaves, 24 F.R.D. 434 (E.D.Tenn.1959).

 Additionally, regardless of the sufficiency of third-party defendants' excuse for not filing an answer in this cause, the court finds that the motion to set aside and the materials filed in support thereof are insufficient as to the other elements basic to setting aside a default entry. First, after failing for more than three months to file an answer in this cause, third-party defendants then delayed for almost another month before moving to set aside the default. Certainly this cannot be characterized as "quick action" to correct the default by the defaulting party. Second, an absolutely essential criteria to setting aside a default entry against a defendant is that the defendant claim with specificity a meritorious defense. A conclusory statement that such a defense exists is not sufficient. Robinson v. Bantam Books, Inc., 49 F.R.D. 139, 140–1 (S.D.N.Y.1970). *See also,* Gomes v. Williams, 420 F.2d 1364 (10th Cir. 1970). There is nothing in the record before the court concerning a meritorious defense which can be characterized as anything other than "conclusory." And certainly this action—where an auctioneer has been held liable in conversion for selling livestock covered by a security interest and is now simply attempting in turn to recover from the debtors who delivered the livestock to auction—is not a case such as Trueblood v. Grayson Shops, 32 F.R.D. 190 (E.D. Va.1963), where the court can "assume" the existence of a meritorious defense.

Therefore, for all of the foregoing reasons, the court denies third-party defendants' motion to set aside the default entry. As the defendant in this case has not as yet applied to the court for the entry of a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, no final judgment as to defendant-third-party plaintiff's claim against third-party defendants will be entered at this time.

*Order*

Accordingly, the court now grants plaintiff's motion for summary judgment. In accordance with the stipulation submitted by the parties, the court enters judgment in the amount of $5,333.92 against defendant Topeka Livestock Auction, Inc. and in favor of plaintiff United States of America. In addition, the court denies third-party defendants' motion to set aside the entry of default entered by the clerk of this court on February 11, 1974. The court now gives defendant-third-party plaintiff thirty (30) days from the date of this memorandum opinion and order to file appropriate showing and application for the entry of a default judgment against third-party defendants Bult.