CENTERRE BANK, N.A.,
Plaintiff–Appellee,
Cross–Appellant,

v.

NEW HOLLAND DIVISION OF SPERRY CORPORATION, Defendant–Appellant, Cross–Appellee.

Nos. 86–1893, 86–1894.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1987.

Decided Oct. 23, 1987.

Rehearing Denied Nov. 30, 1987.

Douglas B. King, Wooden, McLaughlin & Sterner, Indianapolis, Ind., for defendant-appellant, cross-appellee.

R.C. Richmond, III, Ancel, Miroff & Frank, P.C., Indianapolis, Ind., for plaintiff-appellee, cross-appellant.

Before WOOD, RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In this diversity case, New Holland Division of Sperry Corporation (Sperry) appeals the decision of the district court holding it liable for conversion under article 9 of Indiana's version of the Uniform Commercial Code (U.C.C. or Code). Centerre Bank, N.A. (Centerre) cross-appeals the district court's calculation of its damages resulting from the conversion. For the reasons set forth below, we affirm the judgment of the district court regarding Sperry's liability for conversion. However, we reverse the district court's judgment concerning the amount of damages and remand for further proceedings.

I

Facts

The Martinsville Equipment Company (MEC) financed the inventory it purchased from Sperry under a floor plan arrangement. Sperry and MEC were parties to a Dealer Security Agreement and a Retail Financing Agreement, both dated June 2, 1977. *See* Plaintiff's Exs. 2 & 3. The agreements between the companies provided that Sperry would sell New Holland farm equipment to MEC on credit and, in return, MEC would grant Sperry a security interest in the inventory and proceeds. Sperry had the option of purchasing time payment contracts received by MEC upon the sale of New Holland inventory. On June 22 and June 29, 1977, Sperry filed financing statements covering inventory MEC acquired from Sperry. The financing statements did not include proceeds of MEC's inventory. *See* Plaintiff's Exs. 16 & 17.

Pursuant to these agreements, MEC acquired as inventory a New Holland T.R. 70 combine, a New Holland fifteen-foot grain head, and a New Holland 962 six-row, thirty-inch corn head with rear weights (New Holland equipment). On September 1, 1978, Centerre purchased the New Holland equipment from MEC for $69,800. On September 19, 1978, Centerre issued a check for $69,800 to MEC as payment in full for the equipment.

MEC failed to notify Sperry of the sale of the equipment to Centerre or to remit payment for the equipment to Sperry. Further, from September 1, 1978 to January 25, 1979, the equipment appeared each month as unsold inventory held by MEC on Sperry's "Statement of Floor Plan Account." Sperry was advised that the equipment was located at various farms for demonstration purposes.

On the same day that it purchased the New Holland equipment, Centerre leased the equipment to John Ream. Mr. Ream and his wife, Gayle Ream (the Reams), were the sole shareholders and directors of MEC and Mr. Ream was the president of MEC. Under the terms of the lease, the Reams agreed to make semi-annual payments to Centerre in the amount of $9,183.54 for five years and to insure and pay all taxes on the equipment. The Reams were entitled to purchase the equipment at the end of the lease term for $6,980. The Reams were authorized to use the equipment solely for their personal farming operation at their home in Morgan

County, Indiana and were prohibited from assigning or transferring the equipment or any interest therein without Centerre's written consent. On September 22, 1978, Centerre filed a financing statement for the New Holland equipment and proceeds in the Morgan County recorder's office.

In either December 1978 or January 1979, Mr. Ream transferred the New Holland equipment from his farm to MEC's premises. This transfer occurred without Centerre's knowledge or consent in violation of the lease agreement. On January 25, 1979, MEC sold the equipment to Phillip N. Teeters for $69,800 without Centerre's knowledge or consent. MEC, however, notified Sperry of the sale to Mr. Teeters.

As payment for the equipment, Mr. Teeters traded in three pieces of Massey–Ferguson farm equipment and executed a retail installment contract with MEC for $30,000, the balance of the purchase price. Also on January 25, MEC assigned the contract to Sperry and, in return, Sperry deducted $29,698 from MEC's account. On September 5, 1979, Mr. Teeters paid Sperry $30,000 pursuant to the installment contract and Mr. Teeters' account was then posted as paid in full. Sperry repossessed the Massey–Ferguson equipment from MEC's premises on April 24, 1980. On August 21, 1980, Sperry sold the Massey–Ferguson equipment to the Rodgers Implement Company (Rodgers). At that time, Sperry was still not aware that MEC had previously sold the New Holland equipment to Centerre. On September 25, 1980, Centerre demanded that Sperry return the Massey–Ferguson equipment and the installment contract. Sperry refused Cen-

terre's demand and Centerre subsequently filed this suit in district court.

## II

### The District Court's Orders

A. *Liability for Conversion*

After a bench trial, the district court held that Sperry was liable for conversion of the Massey–Ferguson equipment and the contract. *Centerre Bank, N.A. v. New Holland Div. of Sperry Corp.*, No. 81–967–C, order at 13 (S.D.Ind. Sept. 20, 1985); R.56 at 13 [hereinafter Order of Sept. 20, 1985]. The district court determined that Centerre purchased the New Holland equipment from MEC as a buyer in the ordinary course of business under Ind. Code § 26–1–1–201(9).[1] Therefore, Centerre acquired the equipment free of Sperry's security interest in the equipment. According to the district court, Centerre perfected its security interest in the equipment and proceeds by filing a financing statement. The district court concluded that Centerre's security interest in the equipment and proceeds continued despite Mr. Ream's transfer of the equipment to MEC and MEC's later sale of the equipment to Mr. Teeters in exchange for a retail installment contract and the Massey–Ferguson equipment. It found that all the requirements of Ind. Code § 26–1–9–306(2)[2], which sets forth when a security interest continues in proceeds of collateral, had been satisfied: 1) Mr. Ream's transfer of the New Holland equipment to MEC constituted an unauthorized disposition of collateral, 2) the Massey–Ferguson equipment and the installment contract constituted identifiable proceeds received by the debtor, and 3) MEC

---

1. As defined in Ind.Code § 26–1–1–201(9):

     "Buyer in the ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not in-

     clude a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

2. Ind.Code § 26–1–9–306(2) provides:

     Except where IC 26–1–9 otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

was a debtor as defined by Ind. Code § 26–1–9–105(1)(d).[3] The district court accordingly determined that Sperry was liable for conversion because its exercise of dominion and control over the proceeds was inconsistent with and contrary to Centerre's superior interest.

### B. *Damages*

The district court issued a second order on April 30, 1986 determining the amount of damages owed to Centerre. *Centerre Bank, N.A. v. New Holland Div. of Sperry Corp.*, No. 81–967–C, order (S.D.Ind. Apr. 30, 1986); R.64 [hereinafter Order of Apr. 30, 1986]. The court first determined when Sperry had converted the installment contract. It decided that, because Sperry had acquired possession of the contract lawfully, it had not converted the contract until September 25, 1980, the date when it refused Centerre's demand for its return. The court reasoned that:

Sperry lawfully possessed the contract prior to Centerre's demand in that MEC had assigned the contract to Sperry pursuant to the Retail Finance Agreement between MEC and Sperry. Sperry had no knowledge prior to Centerre's demand that the contract was subject to Centerre's superior security interest. Because Sperry came into possession of the contract lawfully, its possession did not constitute conversion until it refused Centerre's demand.

Order of Apr. 30, 1986 at 5–6. The court then addressed when Sperry had converted the Massey–Ferguson equipment and decided that the conversion occurred on August 21, 1980 when it sold the equipment to Rodgers. The court reasoned that, because Sperry gained possession of the equipment lawfully, it did not convert the equipment until it sold the machinery to Rodgers:

Sperry's initial possession of the equipment was lawful because it repossessed the equipment pursuant to the Dealer Security Agreement between MEC and Sperry. The repossession was based on Sperry's valid security interest in the Massey–Ferguson equipment. Because Sperry came into possession of the equipment lawfully, it did not convert the equipment until it sold the Massey–Ferguson equipment to Rodgers Implement. *Id.* at 6–7 (citations omitted).

The district court assessed Centerre's damages resulting from the conversion of the contract as $30,000 plus prejudgment interest at the statutory rate of 8% per annum from the date of the conversion to the date of the judgment. The court calculated the amount of prejudgment interest to be $6.58 a day.

The court assessed Centerre's damages resulting from Sperry's conversion of the Massey–Ferguson equipment to be the fair market value of the equipment on August 21, 1980, the date that the conversion occurred. Based upon Rodgers' testimony, the court found that the fair market value of the equipment on August 21 was $10,500. The court further held that Centerre was not entitled to prejudgment interest resulting from Sperry's conversion of the equipment. Quoting *Indiana Indus. v. Wedge Prods.*, 430 N.E.2d 419, 427 (Ind. Ct. App.1982), the court stated that prejudgment interest " 'is proper when the damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued.' " Order of Apr. 30, 1986 at 7. Because the district court found that "the fair market value of the equipment was neither clearly ascertainable on the date of conversion nor simply subject to mathematical computation," *id.* at 7–8, it declined to award prejudgment interest for the conversion of the equipment. In total, the district

---

**3.** Ind.Code § 26–1–9–105(1)(d) defines debtor as:

the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of

the collateral are not the same person, the term debtor means the owner of the collateral in any provision of IC 26–1 dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

court awarded Centerre $40,500 plus prejudgment interest on the contract at the rate of $6.58 a day from September 25, 1980 to April 30, 1986.

## III

### Analysis

#### A. *Liability for Conversion*

█ Ind.Code § 26–1–9–306(2) provides that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." " 'Proceeds' includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." Ind.Code § 26–1–9–306(1). It is undisputed in this case that the Massey–Ferguson farm equipment and the installment contract are identifiable proceeds. In addition, the district court found that Centerre did not authorize the transfer of the New Holland equipment from the Reams to MEC. Therefore, the only remaining issue to determine liability is whether Centerre's security interest continues in the proceeds. This issue is resolved by determining whether proceeds must be received by the debtor and, if so, whether MEC is a debtor.

Sperry contends that it is not liable for conversion because "any security interest Centerre had in the New Holland Equipment did not continue in the proceeds of the New Holland Equipment (the Massey–Ferguson Equipment and the Contract) received by MEC under Ind.Code § 26–1–9–306(2) since MEC was not a 'debtor' as that term is defined in Ind.Code § 26–1–9–105(1)(d)." Appellant's Br. at 9. Sperry admits that the Massey–Ferguson equipment and the contract constituted proceeds under Ind.Code § 26–1–9–306(1), but claims that Centerre's security interest in those proceeds did not continue because the proceeds were not "received by the debtor" as required by the statutory language. Centerre claims that its security interest in the proceeds continued because "[a] perfected security interest continues in proceeds 'received by anyone.' " Appellee's Br. at 6 (quoting *Farnum v. C.J. Merrill, Inc.*, 264 A.2d 150, 156 (Me. 1970)). Centerre contends that the district court's judgment can be supported either on the ground that, under Ind.Code § 26–1–9–306(2), proceeds need not be received by a debtor or that MEC is a debtor under the statute.

It is unclear from the plain language of § 26–1–9–306(2) whether the phrase "received by the debtor" modifies the word "proceeds" or merely "collections." While authority exists to support either interpretation, *compare Matter of Guaranteed Muffler Supply Co.*, 1 B.R. 324, 328 (Bkrtcy.N.D.Ga.1979) ("proceeds, by definition, are more than collections received by the debtor") *with First Interstate Bank of Denver v. Arizona Agrochemical Co.*, 731 P.2d 746 (Colo. Ct. App.1986) (a security interest "continues only in identifiable proceeds in the hands of the debtor"), the weight of authority supports the position that "[t]here is no requirement in the Code that the proceeds be received by the debtor, and the creditor's rights thereto are not affected when proceeds are received by a third person." 9 R. Anderson, *Uniform Commercial Code* § 9–306:24, at 152 (3d ed. 1985) [hereinafter Anderson]; *see, e.g., Farnum*, 264 A.2d at 156; *Production Credit Ass'n v. Melland*, 278 N.W.2d 780, 788–89 (N.D.1979); *Baker Prod. Credit Ass'n v. Long Creek Meat Co.*, 266 Or. 643, 513 P.2d 1129, 1132–33 (1973).

The Code's official comments provide little assistance in interpreting this section. The first comment, in pertinent part, provides that the purpose of the changes is "[t]o state a secured party's right to the proceeds received by a debtor on disposition of collateral and to state when his interest in such proceeds is perfected." Based upon this language, one commentator has concluded that the comment "clearly makes the debtor's receipt a condition to the continuation of a security interest in any and all proceeds." R. Hillman, J. McDonnell & S. Nickles, *Common Law and Equity Under the Uniform Commercial Code* ¶ 22.05[1][b], at 22–55 (1985)

[hereinafter Hillman]. While Hillman's interpretation of the language is plausible, the comment does not expressly state that a secured party has a right to *only* those proceeds received by a debtor.

More guidance in interpreting this provision is supplied by comparing the language in the Uniform Commissioners' 1953 version of this section with the current language. The earlier version limited secured parties' rights in proceeds to "proceeds *received by the debtor*" (emphasis supplied). The current version, proposed in the 1956 Recommendations of the Editorial Board, contains the additional language "proceeds *including collections* received by the debtor" (emphasis supplied). This additional phrase was added to the provision "for clarity." *See* 1956 Recommendations of the Editorial Board for the Uniform Commercial Code. One commentator has stated that the amendment was not intended, "by any account, to enlarge the category of proceeds in which a security interest continues." Hillman at 22–56. However, a bankruptcy court, also analyzing the significance of the amendment, interpreted the new language to broaden secured parties' rights in proceeds to include "more than collections received by the debtor." *Guaranteed Muffler Supply*, 1 B.R. at 328. Considering that the drafters apparently amended the section for clarity and not to change its substance, the significance of the amendment appears to be that, as in the original draft, proceeds still must be received by the debtor. The phrase, "including collections" was probably added to make it clear that the term "proceeds" could encompass collections.

We decline to resolve definitively this difficult question of statutory interpretation. As a federal court reviewing a judgment based on diversity of citizenship, *see* 28 U.S.C. § 1332, we are hesitant to decide unnecessarily a difficult question of statutory interpretation that the courts of Indiana have not yet confronted. Because an alternate, and, in our view, more direct ground of decision is available, we choose instead to resolve the issue of liability by determining whether MEC is a debtor as

defined under Ind.Code § 26–1–9–105(1)(d). That section provides that:

"Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term debtor means the owner of the collateral in any provision of IC 26–1 dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

The official comment to the section states: "Occasionally, one person furnishes security for another's debt, *and sometimes property is transferred subject to a secured debt of the transferor which the transferee does not assume;* in such cases, under the second sentence of the definition, the term 'debtor' may, depending upon the context, include either or both such persons." 1972 Official Comment number 2 (emphasis supplied).

One commentator has interpreted the term "debtor" as follows:

The meaning of the term "debtor" is not limited ... to the person who owes the secured obligation. This point is important in cases where the debtor-obligor sells *or otherwise conveys* collateral to a transferee who takes subject to the security interest, and the transferee makes a further disposition of the property. Any property resulting from the transferee's disposition is proceeds because it was received upon the disposition of collateral, that is, property subject to a security interest. The secured party's interest should continue in these proceeds under Section 9–306(2) if they are identifiable, whether or not this Section conditions the perpetuation of an interest in proceeds on the receipt by the debtor. Upon the transfer of the debtor-obligor's rights in the original collateral, the transferee owns this property, and thus the transferee himself, although not an obligor, is a "debtor," which Article 9 defines to include "the owner of the collateral in any provision of this Article deal-

ing with the collateral." Therefore, the proceeds received by the transferee upon his disposition of the original collateral are "received by the debtor," and the secured party's interest should continue because of Section 9–306's literal dictates. Moreover, if a secured party could have reached the original collateral in the hands of the transferee because the transferee took subject to the security interest in the property, the secured party's reach logically should extend to the fruits of this property.

Hillman at 22–56 to 22–57 (emphasis supplied).

Sperry contends that MEC is not a debtor as defined by the U.C.C. because MEC did not *own* the New Holland equipment. Rather, the Reams merely *transferred* the equipment to MEC. Sperry summarizes its position by stating that "the record establishes that Ream remained the owner of the New Holland Equipment and that MEC was, at most, a bailee of the New Holland Equipment." Appellant's Br. at 22.

We find Sperry's interpretation of the Code's language as applied to the transaction between the Reams and MEC to be contrary to the intent of the Code's drafters. The Official Comment to section 9–105 uses the terms "transferor" and "transferee" rather than "owner." This suggests that the Code's drafters recognized that situations could arise where a security interest continues after the debtor has transferred, rather than sold, the collateral. As stated in Hillman, "[t]he meaning of the term 'debtor' is not limited ... to the person who owes the secured obligation. This point is important in cases where the debtor-obligor sells *or otherwise conveys* collateral to a transferee who takes subject to the security interest, and the transferee makes a further disposition of the property." Hillman at 22–56 (emphasis supplied). In the circumstances of this case, we conclude that the conveyance of the New Holland equipment to MEC by the Reams was sufficient to make MEC a debtor under Ind.Code § 26–1–9–105(1)(d). Accordingly, we affirm the judgment of the district court that Sperry is liable for con-

version of the proceeds from the sale of the New Holland equipment.

## B. *Damages*

■ Centerre, appealing from the district court's determination of damages, contends that Sperry converted the Massey–Ferguson equipment on April 24, 1980 and the contract on January 25, 1980—the dates when Sperry acquired possession of the proceeds. Centerre claims that Sperry did not gain possession of the contract lawfully. According to Centerre, Sperry gained possession of the installment contract subject to Centerre's perfected security interest in the proceeds of the New Holland equipment. Centerre further contends that it was a buyer in the ordinary course of the New Holland equipment from MEC and, as a result, cut off Sperry's security interest in the New Holland equipment. Consequently, Sperry's only remaining interest was in the proceeds generated from that sale—the $69,000 purchase price. Centerre further claims that Sperry's ignorance of Centerre's interest is irrelevant because under Indiana law, "conversion [is] a strict liability tort, in which the actor's intent and knowledge are irrelevant to his liability." Cross–Appellant's Br. at 47 (quoting *United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944, 948 (N.D. Ind.1975)). Centerre maintains that the conversion of the equipment occurred when Sperry seized it from MEC, not when Centerre demanded its return. Centerre further contends, based upon the testimony of Mr. Ream, that the fair market value of the equipment on April 24, 1980 was $35,-000. Finally, Centerre claims that it is entitled to prejudgment interest on the contract and on the equipment from the dates it believes Sperry converted the proceeds.

· Sperry contends that Centerre was not a buyer in the ordinary course of business under Ind.Code § 26–1–9–307(1) when it purchased the New Holland equipment from MEC. Relying on *United Leaseshares, Inc. v. Citizens Bank & Trust Co.,* 470 N.E.2d 1383 (Ind. Ct. App.1984), Sperry argues that "Centerre, by simultaneously 'purchasing' and 'leasing' the New Holland Equipment, in fact made no purchase at all

but merely financed the sale of the New Holland Equipment by MEC to the Reams and thus was not a buyer in the ordinary course of business under Ind.Code § 26–1–9–307(1)." Cross–Appellee's Br. at 17. Therefore, Sperry argues, Centerre's purchase of the equipment from MEC "did not cut off Sperry's security interest in the New Holland Equipment and its proceeds." *Id.* at 19. According to Sperry's theory, there was no conversion until Centerre made a demand for the proceeds. Its initial repossession of the collateral was permissible because, under its floor plan arrangement, it was "the junior secured party." *Id.* at 20. Sperry does not dispute, however, the district court's conclusion that its action in selling the collateral constituted conversion. *Id.* at 21.

Although the parties disagree as to whether Centerre was a buyer in the ordinary course, Centerre's status as a buyer in the ordinary course need not be decided in order to determine when the conversion occurred. Ind.Code § 26–1–9–306(2) provides, in pertinent part, that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof *unless the disposition was authorized by the secured party* in the security agreement or otherwise ..." (emphasis supplied). In its conclusions of law, the district court determined that Sperry's repossession of the Massey–Ferguson equipment was lawful because it was based upon its valid security interest in the equipment. The court determined that Sperry's security interest in the equipment continued because the sale was unauthorized. *See* Order of Apr. 30, 1986 at 6. However, we conclude that MEC's sale of the New Holland equipment to Centerre was authorized and, therefore, by the plain terms of Ind.Code § 26–1–9–306(2), Sperry's security · interest in the New Holland equipment did not continue.

Authorization of a sale may be contained in the security agreement or it may be implied from conduct expressing consent. *See* Anderson § 9–306:44, at 168. In this case, the security agreement authorized sale of the equipment. As the district court noted, "[t]he Dealer Security Agreement [between Sperry and MEC] expressly provided, 'The Dealer may sell inventory collateral to users in the ordinary course of his retail business.'" Order of Sept. 20, 1985 at 6; *see* Dealer Security Agreement, Plaintiff's Ex. 3, ¶ 7. However, "where conditions to a sale are imposed by the secured party, a sale by the debtor in violation of the conditions is unauthorized, and the security interest continues." *Anon, Inc. v. Farmers Prod. Credit Ass'n,* 446 N.E.2d 656, 661 (Ind. Ct. App. 1983). In the dealer security agreement between Sperry and MEC, the contract provided that, immediately upon MEC's sale of inventory collateral, MEC "shall deliver to [Sperry] proceeds of the sale which are equal to the unpaid balance for the item sold and in a form satisfactory to [Sperry]." Dealer Security Agreement, Plaintiff's Ex. 3, ¶ 7. However, in *Anon,* the court held that such a provision is not a "true conditional sales authorization." *Anon,* 446 N.E.2d at 662. The court reasoned that, "[i]n essence such a condition makes the buyer an insurer of acts beyond his control and is unfair to a good faith purchaser." *Id.* Further, the court opined that, when the secured party gives the debtor actual authority to sell collateral and the debtor abuses this power, the loss should fall on the party who could have prevented it—the secured party, not the purchaser. *Id.; see also First Nat'l Bank and Trust Co. v. Iowa Beef Processors, Inc.,* 626 F.2d 764, 768–69 (10th Cir.1980). We therefore conclude that, even though MEC did not remit the proceeds of the sale of the New Holland equipment to Sperry, the sale of the equipment was authorized.

In a situation such as this, when the creditor authorizes the sale of the collateral:

the buyer acquires the seller's title free of a security interest, even though the buyer is not a buyer in ordinary course of business as defined by the Code. Otherwise stated, it is not necessary that the buyer be a "buyer in ordinary course" in order to come within the operation and protection of Code § 9–306, for ... a sale under Code § 9–306 destroys the interest

of the secured party in the collateral not because of the meritorious character of the buyer but because the secured party has agreed that a buyer may acquire rights by resale.

Anderson § 9–306:42, at 166 (footnotes omitted); *see also Anon*, 446 N.E.2d at 659; *Finance America Commercial Corp. v. Econo Coach, Inc.*, 118 Ill.App.3d 385, 73 Ill.Dec. 878, 880, 454 N.E.2d 1127, 1129 (1983). While under an authorized sale the purchaser will take free of a security interest, the secured party still has a right to proceeds from the sale. *See* § 26–1–9–306 comment 3. Thus, in this case, Sperry had a right to the proceeds to the sale of the New Holland equipment—the $69,800 payment to MEC from Centerre. However, because Centerre took the New Holland equipment free from Sperry's security interest in the equipment and because Centerre perfected its interest in the collateral and the proceeds, Centerre, not Sperry, was entitled to receive the proceeds from the sale of the New Holland equipment to Mr. Teeters.

Because Sperry retained no security interest in the New Holland equipment, we conclude that the conversion occurred when Sperry wrongfully obtained possession of the proceeds. Under Indiana law, "conversion is a tort involving appropriation of an owner's personal property to a tort-feasor's use and benefit. It occurs in exclusion and defiance of an owner's rights and under an inconsistent claim of title." *Plymouth Fertilizer Co. v. Balmer*, 488 N.E.2d 1129, 1140 (Ind. Ct. App.1986); *see also Howard Dodge & Sons, Inc. v. Finn*, 391 N.E.2d 638, 640 (Ind. Ct. App.1979); *Yoder Feed Serv. v. Allied Pullets, Inc.*, 171 Ind.App. 692, 359 N.E.2d 602, 604 (1977). Conversion is a strict liability tort. The tort-feasor's intent and knowledge are irrelevant to his liability. *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 948 (N.D. Ind.1975); *see also Burras v. Canal Constr. & Design Co.*, 470 N.E.2d 1362, 1368 (Ind. Ct. App.1984); *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App.1983).

Under Indiana law, "[t]he requirement of demand is necessary only as evidence of wrongful conversion where the defendant came into possession of the property lawfully. Where ... a party clearly converts the property to his own use, no demand is necessary." *French v. Hickman Moving & Storage*, 400 N.E.2d 1384, 1389 (Ind. Ct. App.1980); *see also THQ Venture v. SW, Inc.*, 444 N.E.2d 335, 339 (Ind. Ct. App. 1983); *Yoder Feed Serv.*, 359 N.E.2d at 604; *Foley v. Colby*, 148 Ind.App. 391, 266 N.E.2d 619, 621 (1971). According to Prosser, "the taking itself is wrongful, and the tort is complete without any demand for the return of the goods." W. Keeton, *Prosser and Keeton on The Law of Torts* § 15, at 93 (5th ed. 1984).

Sperry claims that it was not liable for conversion of the contract until Centerre made a demand because "the Contract was assigned to Sperry pursuant to the Dealer Financing Agreement between Sperry and MEC (S.F., ¶ 12) and that *Sperry was not aware at the time of the assignment* that Centerre claimed any interest in the Contract (S.F., ¶ 6)." Cross–Appellee Br. at 19 (emphasis supplied). However, this argument overlooks the fact that conversion is a strict liability tort and that knowledge is irrelevant to the tortfeasor's liability. Because we have decided that Centerre obtained the New Holland equipment free of Sperry's security interest in the property and therefore Sperry had no interest in the proceeds, we conclude that Sperry took possession of the equipment and contract wrongfully. We therefore hold that the conversion occurred when Sperry obtained possession of the proceeds, not when Centerre demanded their return.

Because we respectfully disagree with the district court on the question of when Sperry converted the proceeds, the amount of damages must be reassessed. We believe that this matter should be determined by the district court on remand.

### Conclusion

We affirm the judgment of the district court regarding Sperry's liability for conversion. On the issue of damages, we reverse the judgment of the district court and

remand for proceedings consistent with this opinion.

IT IS SO ORDERED.

ESCHBACH, Senior Circuit Judge, concurring in part and dissenting in part.

I agree with the holding of the Majority to affirm the judgment of the District Court that Sperry is liable for conversion of the proceeds from the sale of the New Holland equipment. However, because I disagree with the Majority with regard to the time the subject acts of conversion occurred, I must respectfully dissent from its holding reversing the District Court on the issue of damages.

As the Majority's analysis demonstrates, the key to determining the proper amount of damages in this case is ascertaining exactly when Sperry's acts of conversion transpired. There are only two choices. If Sperry had no lawful right to possess the proceeds of the sale of the equipment by MEC to Mr. Teeters the two acts of conversion took place respectively on the dates Sperry was assigned Mr. Teeter's retail installment contract (January 26, 1979) and the date Sperry took possession of the Massey–Ferguson equipment Mr. Teeters had traded on the New Holland machinery (April 24, 1980). In contrast, if Sperry had a lawful right to possess the subject proceeds its acknowledged acts of conversion did not occur until the September 25, 1980 date Sperry refused Centerre's demand that it return the proceeds.

In an apparent attempt to avoid addressing the question of whether Centerre was a buyer in the ordinary course of business under Ind.Code § 26–1–9–307(1), the Majority bases it determination of whether Sperry had a lawful right to possess the subject proceeds solely upon an interpretation of Ind.Code § 26–1–1–306(2). That approach produces an incongruous result that could be avoided by a proper juxtaposition of the two sections of the Indiana Code that are relevant to the facts presented. The Majority opinion seems to rest on the premise that Sperry and Centerre could not have concurrent secured interests in the New Holland equipment and the proceeds of its eventual sale to Mr. Teeters. The following analysis will demonstrate that assumption misconstrues the relevant provisions of the Indiana Code and leads to an outcome that its §§ 26–1–1–201(9) and 26–1–9–306(2) do not compel.

By avoiding the § 26–1–9–307(1) issue the Majority is obliged to strain the meaning of the § 26–1–9–306(2) term "authorized" in order to protect Centerre's secured interest in the proceeds of the MEC–Teeters sale of the New Holland equipment. Because Centerre was undoubtedly a buyer in ordinary course of business as per Ind.Code § 26–1–9–307(1) the Majority's unfortunate choice of analytical tack could be avoided and § 26–1–9–306(2) given a more realistic reading.

Ind.Code § 26–1–9–307 provides in relevant part:

(1) A buyer in ordinary course of business (IC 26–1–1–201(9)) takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence....

The remainder of Section 26–1–9–307(1) goes on to specify a number of conditions that apply when a person is buying farm products from a person engaged in farming operations and is not relevant here. Ind. Code § 26–1–1–201(9) states:

"Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at a well head or a minehead shall be deemed to be persons in the business of selling goods of that kind. "Buying" may be for cash or exchange of other property or on accrued or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as

security or in total or partial satisfaction of a money debt.

The Parties' Stipulation of Facts on Issue of Liability as submitted to the District Court establishes (at number 2.) that "On or about September 1, 1978, MEC sold to Plaintiff three pieces of New Holland Combine equipment...." Sperry does not allege that Centerre acted in other than good faith or that it had knowledge that its purchase of the New Holland Equipment from MEC was in violation of the security interest Sperry held in those articles. It is clear that MEC was in the business of selling farm equipment. In light of these facts and because none of the remaining qualifications in the statutory definition applies to Centerre, there is no substantive reason to doubt that it was a buyer in ordinary course of business as contemplated by Ind.Code § 26–1–1–201(9).[1] Therefore, a straightforward application of the unambiguous first sentence of Ind. Code § 26–1–9–307(1) leads to the conclusion that when Centerre bought the New Holland equipment from MEC it took free and clear of the security interest in that equipment created by MEC and held by Sperry.

The above conclusion does not terminate the inquiry necessary to properly resolve this controversy. With Centerre's secured interest protected by virtue of its status as a buyer in ordinary course of business, attention must now turn to ascertaining whether Sperry retained any security interest in the proceeds from the second sale of the New Holland equipment. The Majority answers this question in the negative. It relies primarily on *Anon, Inc. v. Farmers Prod. Credit Association,* 446 N.E.2d 656 (Ind. Ct. App.1983) and *First Nat'l. Bank and Trust Co. v. Iowa Beef Processors,*

*Inc.,* 626 F.2d 764 (10th Cir.1980) as the bases for holding that "MEC's sale of the New Holland equipment to Centerre was authorized and, therefore by the plain terms of Ind.Code § 26–1–9–306(2), Sperry's security interest in the New Holland equipment did not continue." I believe the case authority the Majority relies upon does not support the inference it draws.

Neither *Anon* nor *First Nat'l. Bank and Trust* stand for the legal maxim that a dealer security agreement of the nature at issue necessarily and inevitably "authorizes" the type of sale made by MEC to Centerre. In addition, unlike this case both of the cases relied on by the Majority involved a choice between the mutually exclusive secured interests of an original secured party and a second party subsequently granted a secured interest in the same property. In *Anon* the original secured party (creditor) was found to have expressly waived a provision in its security agreement requiring the debtor to obtain the creditor's written permission before selling the collateral. *Anon,* 446 N.E.2d at 662. That finding was a key to the court's determination that the original secured party had authorized the sale of the collateral with the result that its security interest did not survive the sale.

The court in *Anon* also concluded that the creditor had granted the debtor standing authority to sell the collateral limited only by the (unwritten) condition that the debtor promptly remit the proceeds to the secured party. *Id.* The court then cited *First Nat'l. Bank and Trust* as authority for the axiom that "a consent given a debtor by the secured party to sell in its own name 'provided' debtor remits is not a true conditional sales authorization." *Id.* Having both found a waiver by the creditor of

---

1. Careful examination of *United Leaseshares, Inc. v. Citizens Bank & Trust Co.,* 470 N.E.2d 1383 (Ind. Ct. App.1984) reveals a critical difference in the fact situation presented there which renders it inconsequential to this analysis. In that case the purchaser/lessor was found to have purchased the subject automobiles and simultaneously leased them back to the same legal entity. The court held that there was no sale but rather the purchaser/lessor had in fact loaned the purchase price of the automobiles to the seller/lessee, the automobiles serving as security for the loan. There was no such sale/leaseback arrangement between Centerre and MEC. Centerre bought the New Holland equipment from MEC and then leased it to John Ream. John Ream and MEC are separate persons. Thus, *United Leaseshares* cannot be said to stand for the proposition that under the facts of this case Centerre was not a buyer in ordinary course of business as per Ind.Code §§ 26–1–1–201(9) and 26–1–9–307(1).

the sole written condition on the debtor's sale of the disputed collateral and ascertained that the unwritten condition on the sale was not a condition at all, the *Anon* court arrived at the conclusion that the sale was in fact authorized by the secured creditor and that the creditor's secured interest in the collateral had thus been extinguished.

It is true that *Anon*, relying upon *First Nat'l. Bank and Trust*, can be read to establish a rule under Ind.Code § 26-1-9-306(2) that a creditor's conditioning the sale by its debtor of secured collateral solely on an unwritten stipulation that the debtor will remit the proceeds of any sale of the collateral to the creditor is not a true conditional sales authorization. However, the Majority extends this fair reading of *Anon* beyond its legitimate bounds when it applies it here to find the Dealer Security Agreement between Sperry and MEC to constitute an unconditional authorization for MEC to make the type of sale at issue.

The Sperry–MEC Dealer Security Agreement does (at item 5.) state that:

Dealer represents and warrants that: (a) at the time the Company's security interest attaches with respect to any collateral, the Dealer shall be the owner of said collateral *with good right to* sell, transfer, assign or pledge the same, free from any lien, security interests, encumbrances or other right, title or interest, other than that of Company; ... (emphasis supplied).

Item 7 of that same document provides further in relevant part that:

*The Dealer may sell inventory collateral* to users in the ordinary course of his retail business. *Immediately upon such sale, Dealer shall deliver to the Company all cash proceeds*, consisting of money, checks and the like, in the exact form in which they are received, and to evidence the Company's rights hereunder, assign or endorse such proceeds to Company (emphasis supplied).

The agreement contains a total of eighteen item paragraphs and covers three pages. Among those paragraphs is the proviso at item 12 that:

The Dealer shall:

(a) ...,

(b) keep the collateral free from all other liens, encumbrances, security interests, charges and claims whether contractual or imposed by operation of law, and shall not remove the collateral from the Dealer's place of business, except in the ordinary course of Dealer's retail business, without the prior written consent of the Company.

The Majority's facile reliance upon the rule of *Anon*, drawn as it was from a simple fact situation involving only a course of dealing-based verbal condition on the sale of secured collateral, to moot the manifold conditions imposed by the Sperry–MEC Dealer Security Agreement is unwarranted and would surely lead to serious negative future consequences for the parties to the kind of floor plan inventory financing schemes involved here. To infer that Sperry in fact through the consummation of the Dealer Security Agreement authorized the fraudulent act of deception engaged in by MEC defies rationality. MEC's conduct almost certainly abridged the above-cited restrictions of item 12(b) of its Agreement with Sperry. That fact alone is sufficient to support the District Court's finding that the sale of the New Holland equipment by MEC to Centerre was unauthorized. *See* District Court Order of Apr. 30, 1986 at 6.

Based on the foregoing analysis I am compelled to conclude that the District Court was correct in finding that the sale of the New Holland equipment by MEC to Centerre was not "authorized" by the Dealer Security Agreement between Sperry and MEC or otherwise. Because Sperry did not authorize the sale of the collateral New Holland equipment by MEC to Centerre, its security interest in that collateral continued after the sale pursuant to Ind.Code § 26-1-9-306(2). Nevertheless, by operation of Ind.Code § 26-1-9-307(1) Centerre took free of Sperry's security interest. Thus, once the New Holland equipment was sold a second time, Sperry's security interest in the proceeds of that sale was, like its security interest in the collateral

itself, subordinate to Centerre's security interest.

The above conclusions notwithstanding, the critical fact remains that even after the sale of the New Holland equipment to Mr. Teeters by MEC, Sperry still had a valid security interest in the installment contract and the used Massey–Ferguson farm machinery that were the proceeds of the second sale of the New Holland equipment by MEC. As the District Court apparently realized, Sperry's lawful interest was not necessarily destroyed by the operation of Ind.Code § 26–1–9–307(1) granting Centerre an unfettered interest in the New Holland equipment (and therefore in the proceeds of the second sale of that equipment). Nothing in the Code expressly requires that Sperry's subordinate security interest in the proceeds at issue (against all others save Centerre) be extinguished absent a finding that it authorized the sale that resulted in Centerre achieving a superior security interest in those proceeds. A careful study of the relevant Indiana case law discloses no such rule. Therefore, I believe the Majority errs when it creates new Indiana law to that effect by an inappropriate invocation of case authority that is only tangentially relevant to the question upon which the determination of damages in this case must turn.

Because Sperry retained a valid subordinate security interest in the proceeds of the sale of the New Holland equipment by MEC to Mr. Teeters, the barrier to sustaining the District Court's holding on the question of when the two acts of conversion by Sperry actually took place dissolves. Indiana law teaches that when a party comes into possession of property lawfully an act of wrongful conversion does not transpire until the holder of a superior interest demands possession. *French v. Hickman Moving and Storage,* 400 N.E.2d 1384, 1389 (Ind. Ct. App.1980). By the rule of *French* Sperry's acts of conversion did not occur until the September 25, 1980 demand by Centerre that the proceeds of the second sale of the New Holland equipment be delivered to it. Ac-

cordingly, I would also affirm the District Court on the issue of damages.